Chief Justice Robertson
delivered the Opinion of the Court.
Alexander Parker, entitled as the heir of Richard Parker, to appropriate six thousand six hundred sixty six and two thirds acres of land, in consideration of military services rendered by Richard, sold and, for a valuable consideration, assigned his equitable interest to Walker Daniel and Daniel Broadhead; who located fifteen hundred acres thereof on Big Barren river, in this state, in 1784, a short time prior to the death of Walker Daniel, who died, intestate, about the beginning of the year 1785, leaving Robert Daniel his heir at law; who, in *379 March, 1785, agreed, by a covenant in writing, to-convey to Martin Daniel, five hundred acres, described as lying “on the south side of Big. Barren, near the mouth “ of Drake’s creek, to include the ford to Cumberland, “ part of the survey of fifteen hundred acres in the “ name of Parker"’ — in whose name a patent was- issued' for the fifteen hundred acres. About the year 1798, Martin Daniel sold and covenanted to convey to Thomas Hendrick, by a designated boundary, including the mouth of Drake’s creek, five hundred acres of the tract of fifteen hundred acres, and, in 1804, made him a conveyance accordingly. To obtain a perfect legal title to this five hundred acres, Hendrick, whose heirs are now the appellees, brought a suit in chancery against the heirs of Parker, and of Broadhead, and of R. Daniel, and against Barclay and others, who claimed the same land by contracts of purchase from persons wh-o claimed under a mortgage of the whole tract of fifteen- hundred, acres, from Broadhead to Michie and others,, dated in 1794.
The-holder of at jtTto^wo^joint' purchasers, who the patent for which, issues m vendor. One of by1Sdesi°gnated- boundaries ues^Thehnd" B. also, settles ^soo1,) Sehfiming under the other joint purchaser, and his claim interferes with H’s 500 acres, as laid off. Long a*"ter t*1? set**e_ ment of the parties, respectively, H files his bill to perfect his title, and recove1'.**16 interference fromB. Held that H’s purchase has been improperly located: if located tig*1*. ** would not include any of B’s claim. And, ifH is entitled to 500 acres out of the 1500, yet as B’s vendor purchased with the consent and at the instance of H, and B has been long in possession, he has a superior equity to the part he holds, and H cannot include it in his allotment.
The Circuit Court having rendered a decree in favor of the heirs of Hendrick, according to the prayer of the-bill, Barclay has appealed.
Among various questions raised in- the argument of the-case, we shall consider only three:—
First. According to a decisive preponderance of facts, the Cumberland ford, included by the boundary of the fifteen hundred acres, was, at the date of Robert Dan-lei’s covenant, considerably lower on the river than the mouth of Drake’s creek, and five hundred acres, properly bounded, so as to include- that ford, would not reach as high as the mouth of Drake’s creek, nor touch the land claimed by Barclay. It would seem, therefore, that the land included in- the- decree-a-nd in the covenant from Martin Daniel to Hendrick, is altogether different from that included in Robert Daniel’s covenant to Martin, *380 And this deduction from, the evidence is fortified by the fact, that Robert Daniel’s covenant was for land, not including, but lying “near,” the mouth of Drake’s creek, which would be the case if the true ford to Cumberland were included in the boundary of the five hundred acres. Consequently, as Barclay claims for a valuable consideration, and has improved, under Broadhead’s equity, land decreed to the appellees, which seems never to have been sold by Robert Daniel, and more especially as Meriweather, the vendor of Barclay, bought with the knowledge and at the instance of Hendrick, long after the latter had bought from Martin Daniel, the decree, on this ground alone, is erroneous, even if the appellees be entitled to- five hundred acres of the fifteen hundred acre tract,, and to.an equitable partition-accordingly; for,, although Hendrick lived many years within the boundary described in Martin Daniel’s deed to him, yet Meriweather and Barclay also occupied, for several years, and Barclay,- as we infer, still occupies the land claimed by himself, and bought from Meriweather — and therefore, the long possession by Hendrick cannot entitle him to-any peculiar equity to an allotment to himself of land to which even Robert Daniel himself would not be entitled, in the partition, under similar circumstances; and, consequently, the fact that his heirs made no objection, to the decree, is insufficient to give it validity.
One who, knowing ail the facts material to Ms title to a tract ef land, advises another to buy it of an adverse claimant, should he estopped, in equity, from asserting a doubtful claim to it_ Equity, to avoid a joint tenancy, will give- effect to slight circumstances, showing that there never was any such tenancy, or that it lias been severed. But where there is no such circumstance, equity follows the law; and where one joint tenant died before the. jus accrescendi was abolished, in 1787,the other» or others, took the estate by survivorship.
*380 Second. It appears, as. already suggested, that Meriweather was advised by Hendrick to buy the land which he afterwards'sold to Barclay; and it does not appear that Hendrick was then ignorant of any of the material facts respecting the character of his own title.
This fact should operate as an estoppel, at least so far as to postpone a claim, otherwise questionable.
Third. But there is a more radical and extensive objection to the decree-.
It appears that Broadhead and Walker Daniel were-joint tenants; and, although equity will, to avoid survivorship-, give to slight circumstances the effect of showing, either that an estate held by more than one person was several and not joint, or that, if ever joint, there had since been a severance: nevertheless, in this case *381 there is no fact tending to authorize either of these deductions; and therefore equity must here, as in other cases, follow the law. Without particularizing and reasoning on all the facts, we deem it sufficient to state, the only judicial conclusion which we feel authorized to draw from them, and that is, that they tend,, when properly scrutinized and understood, rather to show, not only that there was a joint tenancy, but also that, if there was a severance, Broadhead was entitled by it, to the whole fifteen hundred acres, as a part of his share. As then, Walker Daniel died intestate prior to the abolition of the jus accrescendi’in 1787, and, as there is nothing to allow the inference that he and Broadhead bought several interests, we feel impelled to the conclusion, that, if Walker Daniel held any equitable interest in the fifteen hundred acres at the time of his death, it survived to Broadhead; who has not, as far as. we are enabled to judge, done or omitted to do any thing, prior to the filing of the bill, which, so far at least as Barclay is concerned, amounted to proof that he was never entitled to the whole fifteen hundred acres, or had ever waived that l’ight. And his failure to answer the bill cannot affect Barclay.
And therefore, although Barclay may not have a perfect derivative title, the decree, as to him, is erroneous.
What effect Hendrick’s possession may hereafter be entitled to, as to others, we shall not intimate, because no such question is now before us.
Wherefore, it is decreed and ordered, that as to Barclay, the decree be reversed, and the cause remanded, with instructions to dismiss the bill as to him.