NELSON & OTHERS, Plaintiffs in Error, vs. WYAN & OTHERS, Defendants in Error.

1. A testator, in his will, devised specific land of an estimated value to each of his children, and directed that, upon final distribution, the devises should be equalized, and the balance of his estate equally divided. *Held,* that, in equalizing the devises, the child who received land of the greatest estimated value, was not to be charged with interest upon the excess.

2. In distributing an estate, *interest* is not to be charged upon advancements.

*Error to Cooper Circuit Court.*

Bill in chancery, filed in 1847, by a portion of the heirs of Jacob Wyan, deceased, against the other heirs and executors, for a partition of the real estate and a distribution of the personal assets belonging to the estate.

Jacob Wyan died in the spring of 1842, leaving six children, to some of whom he had made advancements during his life. In his last will, he made specific devises of land to each of his children, and to two of them a bequest of $2000, to be taken out of the stock of a firm of which he was a member at the time of his death. The will then proceeded as follows :

"It is my wish and desire that each one of my children should receive an equal portion of my estate in a final distribution, estimating and counting the advancements to each, and also the lands and property before mentioned as devised and given to each, as I here estimate the same. I have heretofore given my daughter, Sarah J. Trigg, by way of advancement, the sum of $1000 in cash, and I value the real estate herein given and devised at the sum of $6000. I have heretofore given to my daughter, Mary J. Nelson, the sum of $2000, in money, by way of advancement, and I estimate the real estate herein given and devised to her at the sum of $5000. I have heretofore given by way of advancement to my daughter, Margaret J. Russell, the sum of $2000, and I estimate and value the real estate herein given and devised to her at the sum of

HARVARD LAW SCHOOL LIBRARY

$4000. I have heretofore given to my daughter, Nancy S. Myers, the sum of $1000, by way of advancement, and I value and estimate the land herein willed and devised at the sum of $6000, and the stock at $2000, making in all $9000. I estimate and value the real estate and bequests herein given and devised to my son, Wesley, at the sum of $8000. I estimate and value the real estate herein devised to my daughter, Paulina E. Wyan, at the sum of $4000."

After making provision for his widow and authorizing his executors to sell any portion of his real estate except such as was specifically devised, the testator concluded his will as follows : " It is my will and wish that all the residue of my estate, not hereinbefore disposed of, shall be distributed among my children, (naming all of them,) so that each one, with the advancements and bequests herein mentioned, shall receive an equal portion of my estate after such distribution."

On the 22d of July, 1842, soon after the testator's death, his executors paid to Nancy S. Wyan the $2000 bequeathed to her in money, and subsequently paid various amounts at different times to each of the children. The bill charged that " since the death of the testator" the several children had taken possession of the real estate devised to them, and this was admitted in the answer ; but it did not appear whether it was productive or unproductive.

The prayer of the bill was that partition and distribution be so made that each of the children would receive an equal portion of the estate, " counting the advancements to each of the heirs and the amount each may have received since the death of the testator."

The cause was referred to a commissioner to take an account. From the commissioner's report, it appeared that, in stating the account, he proceeded upon the assumption that the testator " intended that his children should be made equal out of the principal of his estate as he left it at his death, and that each should receive a corresponding or equal portion of the rents, profits, interest or moneys arising from the sale of real estate

or otherwise that may have accrued in the hands of his executors after his death;" and accordingly, he allowed "interest on all sums due those legatees who had received smaller bequests and advancements until they have received an amount equal to the legatee who received the largest bequest and advancement." As Nancy S. Wyan received the $2000 bequeathed to her on the 22d of July, 1842, the commissioner adopted that as the date of the commencement of the account, and assuming that she then received $9000, including the advancement, bequest, and estimated value of the real estate devised, allowed interest from that date on the sums necessary to make the other children equal, until they received them. The report showed a balance in the hands of the executors to be distributed. From the evidence before the commissioner, it would seem that it was agreed by all the parties that interest should be allowed upon the *cash payments* made by the executors.

Exceptions were taken to the report and sustained, and the Circuit Court decreed that advancements, specific devises and bequests be " equalized out of the real estate, without any interest, and that the balance of the estate on hand be equally divided among the legatees." The complainants and one of the defendants, against whom this ruling operated, brought the case to this court by writ of error.

*Washington Adams*, for plaintiffs in error. 1. The report of the commissioner shows that there were ample moneys in the hands of the executors to equalize the legatees, and they should have been equalized in money. 2. The equality ought to be produced out of the principal, and as the incident (the interest) should follow the principal, each devisee ought to be allowed a portion of the interest, ratably with the amount required to equalize his share. (*White's heirs* v. *White's Adm'r*, 3 Dana, 377.)

*P. R. Hayden*, for defendant in error. There was no error in refusing to allow interest. The testator had a right to devise his property as he pleased, and to give to some the en-

23—VOL. XXI.

joyment of their shares earlier than to others. The will looks to a future period for the "final distribution," and the intention of the testator manifestly was, that when that period arrived, the advancements, specific devises and bequests should be equalized *in kind*, according to the value put upon them in the will, without interest; and that the balance of his estate, including accumulated interest and profits, should be equally divided. The inequality, arising from the enjoyment at an earlier date, if any, was one made by the testator himself, who had a right to make it. But the commissioner charged interest upon the testator's estimation of the value of the land, when in fact it did not appear that it had been productive or increased in value. The specific devises are to be regarded as advancements, upon which it is settled that no interest is chargeable. (3 Pick. 450. 17 Mass. 356. 6 Watts & Serg. 203. 5 Dana, 168. 9 Dana, 13.) But even if the testator is to be considered as intending that the equalization should be made at his death, and if the amounts necessary to make up the excess to those who received smaller shares are to be regarded as so much of their money in the hands of the executors, still it is settled that legacies do not *draw* interest; though if the funds out of which they are payable are productive, the legatee is entitled to the interest or profits actually accumulating. It was upon this latter principle and no other that the case cited from 3 Dana was settled. But in the case at bar, it does not appear either that the payment has been wilfully postponed by the executors, or that any profits, by way of rent or otherwise, have accumulated in their hands.

SCOTT, Judge, delivered the opinion of the court.

1. This was a bill in chancery, commenced under the former system of practice. From the contents of the bill, it may be gathered that its chief aim was to obtain a partition of the real estate of Jacob Wyan, deceased, among his heirs. Such being its end, we are surprised that the plaintiffs in error should per-

sist in the statement, that the most valuable portions of the real estate had been sold, under the authority of the will, by the executors.    It may be, and is probable, that the case has altogether outgrown the pleadings, and that it is now in a very different situation from that which it occupied at its beginning. Be that as it may, we will proceed to give our opinion on the point in the cause as we gather it from the objections to report of the commissioner, spread upon the record ; and we must be permitted to say, that we are utterly at a loss to conceive on what ground the plaintiffs in error base their claim to the interest for which they contend.

We entirely approve the principle of the case of *White's heirs* v. *White's heirs*, (3 Dana, 378,) as it is understood by us ; and if there are any facts in the present case which would render it applicable, it should be enforced.    In that case, an estate was to be distributed equally among heirs.    The administrator had in his hands a sum of money for distribution. A portion of the heirs received their share of it, and the balance remained undistributed, bearing interest.    Afterwards, when the balance was to be apportioned out, they who had received their shares maintained that the heirs who had received nothing should be paid out of the principal and interest, and thereby leave a balance for another distribution ; but the court refused this, and held, that, inasmuch as a portion of the heirs had received their shares from the administrator, and the shares of the rest remained in his hands, making interest, it was right that they should have the interest their shares had made, and allowed them their portions and the interest that had accumulated on them from the time a part of the heirs were first paid. The justice of this course commends itself to every one.    But that is not this case, and has nothing to do with it.    There, the money was paid by the administrator, not advanced by the father.    It was money and not barren and unproductive lands or lots.    The amounts here sought indirectly to be charged, with interest, are advancements made by the testator, and those advancements made mostly in lands which it does not appear were

productive, and which, it is maintained, though they be unproductive, does not alter the case. The law with respect to interest on legacies has no application here. As we understand the matter, there is no controversy as to the interest allowed for the purpose of equalizing the payments actually made in cash. It is only to so much of the report as allowed interest in the excess of value in real estate received by one heir more than another, of which complaint is made.

2. The rule is, that advancements do not bear interest. (*Osgood* v. *Brook's heirs*, 17 Mass. 356. *Hall & wife* v. *Davis*, 3 Pick. 450.) It would work gross injustice to make them do so. A parent advances to a child a thousand dollars; twenty years after, he advances to another child, who was then unborn: now, this rule of making advancements bear interest would require the parent, in order to equalize his bounty, to give to the child last advanced, as our rate of interest is now, ten per cent., three thousand dollars. He must have his thousand dollars by way of advancement, and his twenty years' interest thereon, making two thousand dollars more, in order to make him equal with the child first advanced. An advancement is at the risk of the child advanced, from the time it is made. If it is lost, or is destroyed, or perishes, it is at the risk of the child advanced. It is his loss, and he is chargeable with the value of it, at the time the advancement is made, and with no more. So, if the property or money advanced is increased—if it becomes more valuable; as the child would not have been credited by it had it perished, so he shall not be chargeable with any profits it may make. So, if there was any color for the allowance of interest made by the commissioner in calculating the excess in value of real estate received by one heir more than another, the assumption of July, 1842, as the time at which it should begin to be computed, was entirely gratuitous. A father proposes advancing his children equally; he gives one of them, on the attainment of majority, $1000; five years after, another of his children becomes of age: now, in order to make his advancement equal to that of the child first provided for, must he not

only receive a thousand dollars, but interest on that sum from the time the first advancement was made? These advancements are gifts; they are not debts which are discharged. If I give one child one thousand dollars, I do not owe the like sum to another, with interest, until I see fit to pay it. If I give one man a thousand dollars one year, and five years thereafter give a thousand dollars to another man, have I not been equally liberal to both of those men? The natural sentiment of justice in men harmonizes with these views. We cannot, in this instance, suppose that the testator desired any thing else than to conform his action to that sense of justice planted in all mankind. The words of his will show that he meant to be equally kind to all his children, except as stated, and why should those words receive a construction which is at war with the notions of justice usually entertained by men, and make him do that very thing which his language was designed to guard against?

It is strange that the idea should occur to any one, that, because the testator in his will stated the sums at which the lands given to some of his children during his lifetime should be estimated, in making a distribution of his estate, that therefore we should, against the truth, take it that such a sum, in money, was actually advanced. But if such had been the fact, we know of no principle which would warrant us in allowing the other heirs interest on sums equal to those advanced, until they received their distributive shares. The estate consisted, mostly, of real estate; the advancements were mostly made in real estate; whether it was improved or not, does not appear. Now those not advanced, or not advanced with a sum equal to others, might have had their portions of the real estate assigned to them immediately after the death of their ancestor. Why did they wait? If the estate given by way of advancement was unproductive, it would be great injustice to allow the interest claimed by some of the heirs. A testator may make such a will; he may require that his estate should be distributed in the mode contended for by the plaintiffs in error; but there is nothing in the terms of the will, whose construction is involved

in the case under consideration, which requires that such a claim should be allowed.

Judge Ryland concurring, the judgment will be affirmed; Judge Leonard not sitting.