ANNA B. DANA, as Executrix, etc., Appellant, *v.* AGNES MURRAY, Impleaded, etc., Respondent.

Certain premises were conveyed to a trustee in trust, to pay the rents and profits to M. during the life of her husband, and upon his death to convey to her; if he survived her, then upon the further trust to convey to such person or persons and in such manner as she by will might appoint. In case M. died without having made such a will, the deed declared that the premises should belong to her children and the issue of such as died before her. M. died leaving her husband, and seven children, four sons and three daughters, surviving, and leaving a will, which contained a provision declaring it to be the will of the testatrix, that the said premises should be "held and enjoyed" by her husband and her three daughters so long as any two of said daughters should remain single and unmarried, and for the space of one year after the marriage of the daughter who should be married second. At the expiration of the year the executor and trustee named in the will was authorized and empowered to sell the premises and divide the proceeds as specified. M.'s husband thereafter died, leaving the three daughters surviving. In an action of partition *held*, that the power of sale given by the will to the executor was a general power in trust, which was imperative (1 R. S. 732, §§ 74 *et seq.*), and so, that it operated to suspend the vesting of the fee until the power was executed or the estate terminated; that the estate sought to be given was a life estate in each of the beneficiaries as tenants in common with cross-remainders, determinable upon the marriage of two of the daughters, and in case that contingency did not happen, the estate terminated upon the death of all the life tenants; that as the will was but the execution of the power of appointment given by the trust deed, the period during which the absolute power of alienation was suspended was to be computed from the date of the deed (1 R. S. 737, §§ 128, 129), and as so computed the suspension was for more than two lives then in being; that the estate attempted to be created being void the power so authorized to take effect at its termination was inoperative and void; and, therefore, upon the death of M. the absolute fee vested, under the deed, in her children and the issue of such as were dead.

(Argued June 2, 1890; decided December 15, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made March 28, 1887, which reversed, upon the appeal of defendant Agnes Murray, a judgment of the Special Term entered upon a decision dismissing the plaintiff's complaint.

The nature of the action and the material facts are stated in the opinion.

*Stephen P. Nash* for appellant. The suspension exceeds the statutory limits. (1 R. S. 723, 737, §§ 14, 15, 128; *Genet v. Hunt,* 113 N. Y. 158.) The will of Maria Murray was a full execution of the power of appointment, and if valid the ultimate devisees take under this will, and not under the provision of the trust deed. This vested the estate in her issue living at the time of her death, only in case she should depart this life without having made such will, direction, limitation or appointment. (2 Black. Comm. 121; *Roseboom v. Van Vechten,* 5 Den. 414.) If the persons in whom the fee is to vest, after the termination of the precedent estates given to the three daughters, are those of the issue of the testatrix who shall then be living, their expectant estates are clearly contingent remainders, and the property is, therefore, inalienable till the time when the expectant estates shall be vested. (*Purdy v. Hayt,* 92 N. Y. 446, 454.) The fact that it was possible for two of the daughters to be married within any two given lives does not prevent the statute applying. (*Haynes v. Sherman,* 117 N. Y. 433.) The will cannot be modified on any *cy-pres* theory. (*Haynes v. Sherman,* 117 N. Y. 433.)

*James B. Murray* for appellant Anna B. Dana. To test the validity of the will, it should not be construed by itself alone, but must first be incorporated in the deed of trust, and its legality tested after such incorporation. (*Marlbrough v. Godolphin,* 2 Ves. 78; *Braddish v. Gibbs,* 3 Johns. Ch. 522, 549; 4 Kent's Comm. 338; 1 R. S. 737, §§ 128, 129; *Genet v. Hunt,* 113 N. Y. 170.) The estate devised to the husband and three daughters was a life estate, moreover it was an estate for two successive lives. (2 Black. Comm. 121; 4 Kent's Comm. 26; 1 Inst. 42a; 1 Cruise's Dig. 115, § 8; Watkins on Convey. 30–35; *Roseboom v. Van Vechten,* 5 Den. 424; *Hawley v. James,* 16 Wend. 172; *In re Verplank,* 91 N. Y. 439, 443.) The life estate devised to the three daughters of Maria Murray, terminated on the marriage of Mrs.

Dana (then Miss Anna B. Murray) or else is void altogether, and in either case is no longer in existence. (1 R. S. 722, 723, §§ 1, 10, 11.) The estate devised by the will of Maria Murray to her husband and daughters was not a fee. (*In re Verplanck*, 91 N. Y. 443.) The power given by the testatrix to her executor and trustee to sell the premises is imperative, and is a power in trust. (1 R. S. 732, §§ 73, 74, 76, 77, 79, 94, 96; *Delaney* v. *McCormack*, 88 N. Y. 174, 180; *Asche* v. *Asche*, 113 id. 232, 235.) In construing the will executed under the power and incorporated in the trust deed, the provisions of the will speak not from the date of the will, but from the date of the trust deed creating the power, and as if originally a part of the trust deed, and any suspension of the power of alienation is to be measured from the date of the deed of trust. (1 R. S. 737, §§ 128, 129; *Everitt* v. *Everitt*, 29 N. Y. 78.) The interests of the beneficiaries in the proceeds of the sale of said premises under the power are contingent, and do not vest within two lives in being at the date of the deed of trust, or at the date of the will, and are suspended for several lives in being, and moreover for the fixed term of one year. (*Delafield* v. *Shipman*, 103 N. Y. 467; 1 R. S. 723, § 13.) The interests of the beneficiaries are contingent, because the gift itself is future. There are no words of gift in the will except the direction to distribute at a future time, and in such case there is no gift until that time comes. (*Elwin* v. *Elwin*, 8 Ves. 537; 1 Jarman on Wills [5th ed.], 605; *Loder* v. *Hatfield*, 71 N. Y. 92; *Colton* v. *Fox*, 67 id. 348; *Warner* v. *Durant*, 76 id. 136; *Smith* v. *Edwards*, 88 id. 104–108; *Hobson* v. *Hale*, 95 id. 615; *Delafield* v. *Skipman*, 103 id. 463; *Delaney* v. *McCormack*, 88 id. 182, 183; *Teed* v. *Morton*, 60 id. 506.) The interests of the beneficiaries in the proceeds of sale being contingent, and not vesting until after the fixed period of one year, are void. (1 R. S. 773, § 1; *Howe* v. *Van Shaick*, 20 Wend. 564; *Tucker* v. *Tucker*, 5 N. Y. 408; *Cook* v. *Cook*, 7 Paige, 521; *Schulter* v. *Smith*, 41 N. Y. 328; Lewis on Perpetuities, 170; *Knox* v. *Jones*, 47 N. Y. 389, 397.) If the purposes for which a power of sale is created

are illegal or void, the power of sale is void also. (*Van Vechten* v. *Van Vechten*, 8 Paige, 104, 124 ; *Wood* v. *Wood*, 5 id. 597.) Moreover the power is void as creating a suspension of the power of alienation for more than two lives in being, to wit, for lives in being and for at least the fixed period of one year. (*Howe* v. *Van Schaick*, 20 Wend. 564; *Coster* v. *Lorillard*, 14 id. 265 ; *Hawley* v. *James*, 16 id. 62 ; *Harris* v. *Clark*, 7 N. Y. 242 ; *Van Vechten* v. *Van Vechten*, 8 Paige, 104 ; *DePeyster* v. *Celudining*, Id. 295 ; *Amory* v. *Lord*, 9 N. Y. 403 ; *Morgan* v. *Masterson*, 4 Sandf. 442 ; *Jennings* v. *Jennings*, 5 id. 174 ; 4 Kent's Comm. [12th ed.] 271 ; *Brewer* v. *Brewer*, 11 Hun, 147 ; 72 N. Y. 603 ; *Garvey* v. *McDevitt*, 11 Hun, 457 ; 72 N. Y. 556.) Whether the will be held void or valid, the plaintiff, in either case, is a tenant in common with the respondent, and in actual possession of the premises with her, and is, therefore, entitled to partition. The construction of the will affects the distribution of the proceeds only. (Code Civ. Pro. §§ 1532, 1533.)

*Joseph H. Choate* for Agnes Murray, respondent. As to the estate devised to the husband and daughters, there was no suspension of the power of alienation, for there was neither a trust estate nor a contingent remainder created or provided for by the will of Maria Murray or by the original trust deed, to take effect, or to continue, after Maria Murray's death. (*Leonard* v. *Burr*, 18 N. Y. 107; *Radley* v. *Kuhn*, 97 id. 34; *In re Winter*, 34 id. 554, 567; 1 R. S. 730, §§ 60, 61, 67; *Clarke* v. *Davenport*, 1 Bosw. 114, 115; *Genet* v. *Hunt*, 113 N. Y. 171, 172.) By the will of Maria Murray, in connection with the trust deed, there is vested, immediately upon her death, a valid present estate in possession in her husband and three daughters, defeasible by the marriage of the second daughter, and an interest by way of remainder, upon the possible termination of that estate, in her children and their issue. The entire fee is thus disposed of. There can, therefore, be no suspension of the power of alienation. (1 Washb. on Real Prop. 62, 64 ; 4 Kent's Comm. 9, 10 ; *Coster* v. *Lorillard*, 14 Wend. 343 ; Sugd. on Powers

[8th ed.], 411, 412; *Crooke* v. *County of Kings*, 97 N. Y. 449; 1 R. S. 722, 723, §§ 7–11, 35; *Purdy* v. *Hayt*, 92 N. Y. 451; *Leonard* v. *Burr*, 18 id. 96, 99; *Philadelphia* v. *Girrard*, 45 Penn. St. 26; 2 Washb. on Real Prop. [3d ed.] 653; Lewis on Per. 657.) The power of sale is valid, but, in any event, the present vested estate in possession of the husband and daughters is not affected thereby, or by any possible ulterior limitations. (Sugd. on Powers [8th ed.], 111; *In re McLaughlin*, 2 Bradf. 107, 113; *Crittenden* v. *Fairchild*, 41 N. Y. 289; *Kinnier* v. *Rogers*, 42 id. 531; *M. L. Ins. Co.* v. *Shipman*, 108 id. 19, 23, 24; *Hetzell* v. *Barber*, 69 id. 1, 7; *Morse* v. *Morse*, 85 id. 53, 58; 1 R. S. 729, 734, §§ 56, 96; *Phillips* v. *Davies*, 92 N. Y. 199; *Henderson* v. *Henderson*, 113 id. 1; *Eells* v. *Lynch*, 8 Bosw. 479.) The power of sale, as a mere naked power, cannot, under any circumstances, suspend the power of alienation, and is, therefore, valid. This would be true, even though it be considered and treated as an imperative power in trust. (*Eells* v. *Lynch*, 8 Bosw. 479, 480; *Blanchard* v. *Blanchard*, 4 Hun, 287; 70 N. Y. 615; *Hobson* v. *Hale*, 95 id. 610; *In re Woolsey*, Id. 141; *Higgins* v. *Crichton*, 98 id. 626; *Burleigh* v. *Clough*, 52 N. H. 261; *Howe* v. *Van Schaick*, 20 Wend. 556; *Radley* v. *Kuhn*, 97 N. Y. 34; *Haynes* v. *Sherman*, 117 id. 433.) The power in this case being merely a naked discretionary power of sale, cannot suspend the power of alienation. (*Eells* v. *Lynch*, 8 Bosw. 479; *Blanchard* v. *Blanchard*, 4 Hun, 287.) Even if a naked discretionary power of sale, like that in the present case, could in any case suspend the power of alienation, it cannot be held to do so in the case at bar, because the exercise of this power of sale may at any time be dispensed with, and the power itself defeated and extinguished, by the election of these same persons (the children of the testatrix living at her death, and the issue of deceased children taking *per stirpes*) to take their shares as land, and by their formal conveyance of their shares as land. (*Hetzel* v. *Barber*, 69 N. Y. 1, 11–15; *Prentice* v. *Janssen*, 79 id. 478, 485, 486; *Greenland* v. *Waddell*, 116 id. 234, 246; *In re N. Y., L. E. & W. R. Co.*, 105 id. 89,

96.) Even if the subsequent provisions of the will as to the power of sale, together with the other provisions depending upon it, should be held to be invalid, this will not affect the prior limitation of the estate to the husband and daughters. That is a vested estate in possession, wholly independent. (*Leonard* v. *Burr*, 18 N. Y. 96; *Savage* v. *Burnham*, 17 id. 56; *Harrison* v. *Harrison*, 36 id. 543; *Post* v. *Hover*, 33 id. 593; *Henderson* v. *Henderson*, 113 id. 1.)

HAIGHT, J. This action was brought for the partition of real estate. It appears that on the 23d of June, 1847, John M. Mason and wife executed and delivered to Frederick Bronson a deed of the premises sought to be partitioned, " upon trust to receive the rents, issues and profits of the said premises hereinabove granted and described, and apply the same to the sole and separate use of the said Maria (Murray) during the lifetime of (James B. Murray) her husband, and on his death to convey the said premises to the said Maria; and if the said James B. Murray shall survive the said Maria, then upon the further trust to apply the same during her natural life, free from debts or control of her present or any future husband,    *    *    *    and from and after the decease of the said Maria, then upon trust to convey and transfer the said premises to such person or persons, to such uses and purposes, and in such manner as the said Maria, by her last will and testament    *    *    *    may    *    *    * direct, limit or appoint. But in case the said Maria shall depart this life without having made or executed such will, *    *    *    then the said lands and premises shall, in such case, upon the death of the said Maria, belong to all and every the child or children of the said Maria living at the time of her death, and to the issue of such of them as shall be dead, share and share alike, in fee simple, the issues of such deceased child or children to take no more than his or their parent would have taken if living, and in case there be no child of the said Maria or the issue of any deceased child living at the time of the death of the said Maria, then to her

heirs at law in fee simple; and the said party of the second part (the trustee) is hereby directed to convey and transfer the said premises accordingly."

The trustee accepted the trust and discharged the duties thereof until January 12, 1849, when he resigned and conveyed the premises to James B. Murray upon the trust and for the uses mentioned above, who discharged the duties of the trust until February 14, 1866, when he died, since which no trustee has been appointed. December 22, 1851, Maria Murray died, leaving her surviving James B. Murray, her husband, four sons and three daughters, her only heirs at law, and a last will and testament, duly admitted to probate, March 12, 1852, which, after reciting the provisions above quoted from the deed of trust, provides that: "Now, therefore, I, said Maria Murray, wife of the said James B. Murray, by virtue of the power in the said deed contained and in execution thereof, do hereby devise, direct, limit and appoint with regard to the said premises as follows: First. It is my will that the said premises in the said deed, granted and conveyed as aforesaid, shall be held and enjoyed by my husband, the said James B. Murray, and my daughters, Caroline, Agnes and Anna, so long as any two of my said daughters shall remain single and unmarried, and for the space of one year after the marriage of the daughter who shall be married second in the order of time, and I do hereby authorize and empower my executor and trustee hereinafter named, at any time after the expiration of the said year last mentioned, with the consent of my husband if he shall be living, to sell the said premises at public or private sale on such terms and for such price as he may deem expedient. * * * And I do direct that the proceeds of the said sale, after deducting the expenses thereof, be divided among all my children who may then be living, and the issue of any of them who may be dead, in equal shares, the issue of any deceased child to take the share of his, her or their parent."

Frederick Bronson, the trustee under the deed, or whoever may be such trustee at the time of her decease, was, by the

terms of the will, appointed executor and trustee. Anna was married on the 27th day of December, 1855, but Caroline and Agnes have remained unmarried. Agnes is still living, but Caroline died since this action was commenced. James B. Murray, the husband of the testatrix, died on the 14th day of February, 1866.

The trial court held that the will was null and void so far as the premises in question were concerned, and that the fee, upon the death of Maria Murray, vested in her seven children.

The General Term appears to have been of the opinion that the will was valid; that the fee vested in the three daughters, and that the power of sale contained in the will was a discretionary, naked power.

In order to determine the validity of the will, it becomes important for us to first ascertain what has become of the fee if the instrument is valid. Under the provisions of the deed, the premises, upon the death of Maria, vested in her children, share and share alike, in fee simple, unless she should leave an instrument in which she should direct, limit or appoint the person or persons who should take and hold the same. Has she made such appointment? It was evidently her intention so to do, for, after reciting the main provisions of the trust deed, she states in her will that, "by virtue of the power in the said deed contained and in execution thereof," she hereby devises, directs, limits and appoints. As we have seen, she first provides that the premises should be held and enjoyed by her husband and three daughters, naming them, so long as any two of the daughters should remain single and unmarried, and for the space of one year after the marriage of the daughter who should be married second in the order of time. She does not, in express terms, devise the fee or remainder, but she does authorize and empower her executor to sell after the expiration of the year and to divide the proceeds among all her children *who may then* be living, and the issue of any of them who may be dead, in equal shares, the issue of any deceased child to take the share of his, her or their parent. Her intention is quite apparent. She doubtless wished to provide a

home for her husband and unmarried daughters so long as two of them should remain unmarried, and then that the premises should be sold and the proceeds divided among all of her children then living and the issue of those that were deceased. It does not appear to have been her intention to vest in her husband and daughters the fee, or any other estate than that described. True, as we have stated, she has not, in express terms, devised the fee, but she has created a power of sale, and this power was given for the purpose of dividing the proceeds of the sale among her children, etc. We do not understand such a power to be naked and discretionary. A power as defined by the statute is an authority to do some act in relation to lands, or the creation of estates therein, or of charges thereon, which the owner, granting or reserving such power, might himself lawfully perform. It is general or special and beneficial or in trust. It is general where it authorizes the alienation in fee by means of a conveyance, will or charge of the lands embraced in the power to any alienee whatever. It is special where the persons or class of persons to whom the disposition of the lands under the power is to be made are designated, or where the power authorizes the alienation by means of a conveyance, will or charge of a particular estate or interest less than a fee. It is beneficial when no person other than the grantee has, by the terms of its creation, any interest in its execution. A general power is in trust when any person or class of persons other than the grantee of such power is designated as entitled to the proceeds, or any portion of the proceeds or other benefits to result from the alienation of the lands according to the power. (1 R. S. pt. 2, chap. 1, tit 2, art. 3, §§ 74, 76–79, 94.)

The power given by the testatrix to her executor was to sell at public or private sale, on such terms and for such price as he may deem expedient, and upon such sale to create all necessary proper deeds and conveyances to the purchaser or purchasers thereof, which sale and conveyance shall be a complete bar to all claims to the estate or interest in the said premises of her children and heirs, or any person claiming

by or through them. The conveyance thus authorized was of the fee. It could be made to any person whatever. The power was, therefore, general within the provisions of the statute. The executor, thus authorized and empowered to sell, was given no interest in the proceeds whatever. Such proceeds were directed to be divided among all of her children who may then be living, and the issue of any of them who may be dead, in equal shares, the issue of any deceased child to take the share of his, her or their parent. The power of sale thus authorized was in trust for these children who were the persons entitled to receive the proceeds thereof. It was, therefore, a general power in trust, as defined by the statute. The statute further provides that every trust power, unless its execution or non-execution is made expressly to depend on the will of the grantee is imperative, and imposes a duty on the grantee, the performance of which may be compelled in equity for the benefit of the parties interested. (§ 96.)

It follows that the power in question, under the express provision of the statute, is imperative, and its execution will be compelled by the court; and this being the case, it operates to suspend the vesting of the fee until the power is executed or the estate is terminated. (*Delafield* v. *Shipman*, 103 N. Y. 463; *Delaney* v. *McCormack*, 88 id. 174.)

It is contended that the fee vested in the heirs of Mrs. Murray immediately upon her death, and that the provisions of the will directing the proceeds upon the execution of the power of sale to be divided among the children then living, etc., should be rejected under the authority of *Henderson* v. *Henderson* (113 N. Y. 1).

Of course, if we are to reject the provisions of the will, then the fee would vest under the provisions of the deed, but if the will is valid, it is not apparent how we can reject a portion so vital as the distribution of proceeds of the real estate upon the execution of the power of sale given. We are aware that, in the case of *Henderson* v. *Henderson*, the provision was rejected, but in that case the testator had authorized his executor to partition and divide his residuary estate among his

children living at the time of such partition and the issue of any child or children who had died leaving issue. The executor was directed to make the partition as soon after the testator's decease as practicable, having reference to the condition of the estate; but in order to avoid sacrifice and loss to the estate by reason of being compelled to convert into money, he was not required to make the partition until after the lapse of five years. The provision was rejected for the reason that it would thwart the main testamentary purpose of the testator. In that case but a short period of time was expected to elapse after the death of the testator before partition should be made, and no material change in his children was contemplated. Whilst in this case an estate was created which might continue through the lives of four individuals and until nearly all of the heirs then living were dead, and there is no main testamentary purpose to be frustrated by the provision in question. On the contrary, it would rather appear that this provision, together with the one providing a home for the husband and unmarried daughters, were the main purposes of the testator.

Still assuming the will to be valid, what was the nature of the estate devised to the husband and three daughters and when may the power of sale be executed? The provision is, as we have seen, that the premises shall be held and enjoyed by her husband and three daughters so long as any two of the daughters shall remain single and unmarried, and for the space of one year after the marriage of the daughter who shall be married second in the order of time. On the marriage of one of the daughters her spinsterhood would cease, but not the estate, for two daughters would still remain unmarried. If neither of these daughters should marry, the estate would still continue during their lives, and, inasmuch as this event may never happen, it must be regarded as an estate for life, subject to defeat in case of the marriage of the second daughter. (2 Blackstone, 121; *Roseboom* v. *Van Vechten*, 5 Denio, 424.)

The estate devised to the husband and three daughters is *in solido*, and the statute provides that "every estate granted or

devised to two or more persons in their own right shall be a tenancy in common, unless expressly declared to be in joint tenancy." (1 R. S. 727, § 44.)

Here we have no express words devising the estate to them as joint tenants, or words clearly imputing such intent, and they consequently must be regarded as tenants in common. (*Purdy* v. *Hayt*, 92 N. Y. 446–452; *In the Matter of Verplank*, 91 id. 439–443.)

But one sale has been authorized and one division ordered after the termination of the life estate, and the persons entitled to such division can only be ascertained when that event shall take place. The property consists of a house and lot not capable of being partitioned. Her desire, as we have seen, doubtless was to provide a home for her husband and unmarried daughters, and it was manifestly her intention that the survivor or survivors should succeed for life or during the continuance of the estate of those that should die. Each, therefore, took a life estate with the cross remainders as tenants in common, determinable upon the marriage of two of the daughters, so that when the husband, James B. Murray, died, his one-fourth interest vested in the three daughters, and when Caroline died her life interest vested in the two remaining daughters, and when one of the two remaining daughters shall die the life estate will vest wholly in the survivor. The will has provided for the termination of the estate upon the marriage of two of the daughters, and no express provision has been made for the termination of the estate in case all of the life tenants shall die during the spinsterhood of the daughters or two of them, but the estate created was only a life estate, and of necessity terminates with the death of all of the life tenants. The power of sale provided for in the will can be exercised in one year after the marriage of the second daughter or after the termination of the life estate, which, upon the failure of two of the daughters to marry, could only occur upon the death of all of the life tenants.

Having ascertained the nature of the estate devised, it remains to be determined whether or not the will is valid under

the statute. As we have seen, the will was but the execution of the power of appointment given to the testatrix by the trust deed to Bronson. She was not the owner of the premises, and could convey the fee only in the exercise of the power given by this deed. The statute provides that the period during which the absolute right of alienation may be suspended by any instrument in execution of a power, shall be computed, not from the date of such instrument, but from the time of the creation of the power. And no estate or interest can be given or limited to any person by an instrument in execution of a power which such person would not have been capable of taking under the instrument by which the power was granted. (1 R. S. 737, §§ 120, 129; *Everitt* v. *Everitt*, 29 N. Y. 39–78.)

The will was the instrument executing the power which was created by the deed. It consequently must be joined with the deed, and a computation of the time within which the right of alienation may be suspended determined from the date of the deed. The statute further provides that every future estate shall be void in its creation which shall suspend the absolute power of alienation for a longer period than is prescribed; that the absolute power of alienation shall not be suspended by any limitation or condition whatever, for a longer period than during the continuance of not more than two lives in being at the creation of the estate, except in a single case mentioned, which has no connection with the question under consideration. (1 R. S. §§ 14, 15.)

A future estate dependent upon a precedent estate is termed a remainder. (§ 11.) It is either vested or contingent. It is vested when there is a person in being who would have an immediate right to the possession of the lands upon the ceasing of the intermediate or precedent estate. It is contingent whilst the person to whom, or the event upon which it is limited to take effect, remains uncertain. (§ 13.)

The estate created by the will in favor of the husband and three daughters was a precedent estate. The imperative power of sale given in trust for the children of the testatrix then living, and the issue of those that are dead, operated to

vest in them the fee on the termination of the precedent estate. It was, therefore, a future estate dependent on a precedent estate, which is termed a remainder. It is contingent for the reason that the persons to whom the estate is limited to take effect remains uncertain. The children of the testatrix now living may die leaving children who will take in their parents' stead when the event occurs upon which the precedent estate is terminated. The estate being a contingent remainder is, therefore, inalienable. (*Leonard* v. *Burr*, 18 N. Y. 96–107; *Radley* v. *Kuhn*, 97 id. 26–34.)

The deed created a life estate in Mrs. Murray. Her will created a life estate in her husband and three daughters determinable upon the marriage of two of the daughters, each taking as tenants in common with cross remainders. The same cannot be terminated except upon the death of the four life tenants without the marriage of two of the daughters. So that, with the exception of the undivided one-fourth originally taken by the survivor under the will, more than two lives must pass before the life estate would be terminated, and this would be so even omitting the life estate created by the deed, but under the statute to which we have already called attention, we think this life should be counted. The rule is that where by the terms of a deed creating an estate there may be an unlawful suspension of the power of alienation, the limitation is void although it turns out by a subsequent event that no actual suspension beyond the prescribed period would have taken place. (*Hawley* v. *James*, 16 Wend. 121; *Purdy* v. *Hayt*, 92 N. Y. 446, 457; *Haynes* v. *Sherman*, 117 id. 433, 437.)

The estate may yet be terminated by the marriage of the second daughter, but before the happening of that event all of the other life tenants may die thus leaving the provision within the condemnation of the statute. It may be claimed, however, that as to the undivided one-fourth originally taken by the surviving life tenant under the will, that as to that interest only two life estates have been created. The case of *Purdy* v. *Hayt* (*supra*), adds weight to this claim and presents a serious question. But at this time it is impossible to tell

who will be the surviving life tenant, or whose one-fourth interest would be within the provisions of the statute. The case is, therefore, presented, where three-fourths of the life estate devised is void under the statute whilst the other one-fourth may be valid, but, it cannot be determined which is valid or which condemned until after the death of three of the life tenants. The person being unknown and the claim contingent, we incline to the view that this is also within the condemnation of the statute.

The provisions of section 17 of the statute, to the effect that when a remainder shall be limited on more than, two successive estates for life, all the life estates subsequent to those of the two persons first entitled thereto shall be void, doubtless refers to estates in which the remainder is vested and is not contingent. In such estates the power of alienation is not suspended. (*Purdy* v. *Hayt,* 92 N. Y. 446–451.)

The estate attempted to be created by the will being void, the power of sale authorized to take effect at the termination of the estate becomes inoperative and must be regarded as also void. It follows that upon the death of Mrs. Murray the fee absolute vested under the deed in her children then living and the issue of such as were dead.

The judgment of the General Term should be reversed, and that of the Special Term affirmed, with costs.

All concur; BRADLEY J., in result.

Judgment accordingly.