(Surrogate's Court, Rensselaer County.   December, 1895.)

**1. WILLS—LEGACIES—ADVANCEMENT—INTEREST.**

Testator gave all his property to his executors in trust to distribute his personal property as follows: Nine-fifteenths to his wife and her two children, the $11,000 which he had advanced to her to be considered as part of such nine-fifteenths; the remainder to be divided among his three children by his former wife. He directed that his executors should receive the rents of the real estate, and pay a third to his wife and a fifth of the remainder to each of his five children during the life of his wife, and that, at her death, the executors should sell his real estate, and from the proceeds thereof first make the distribution of his whole estate among his children equal (estimating that his children by his second wife would have received the $11,000 advanced by him to her), if the distribution shall not have been made equal by the distribution of his personal property; and, after making such equality, the executors were to distribute the residue of the proceeds of the real estate equally among the five children. On the distribution of the personalty, it all went to the children by the former wife, for the reason that the $11,000 advancement was more than nine-fifteenths of the sum of the two. *Held* that, at the distribution of the proceeds of the real estate on the judicial settlement of the executors, interest should not be charged either on the $11,000 or on the money paid at the distribution of the personalty.

**2. SAME—CONSTRUCTION—RIGHT TO SHARE OF DECEASED LEGATEE.**

Under such will, where one of the three children of testator by his former wife died before testator, his share in the proceeds of the real estate would go to his full brothers and sisters, up to the amount necessary to equalize the distribution of the personalty, and after that to the half and full brothers and sisters alike.

**3. SAME—VESTING OF INTEREST.**

A devise of real estate to executors to collect the rents and distribute them to testator's wife and children, and at the death of his wife to sell the real estate and divide the proceeds among his four children, does not vest an interest in the real estate in one of the children, which, he dying before his mother, could pass by his will.

Judicial settlement of the accounts of James Keenan and others, executors and trustees of the will of Thomas Downing, deceased.

Akin & Keenan, for executors and trustees James Keenan and John Magill.

McClellan & Albertson, for legatee and devisee Isaac Downing.

G. L. Stedman, for legatees and devisees Nancy Blackburn and Elizabeth Dunham.

LANSING, S.   Thomas Downing died in the city of Troy on the 9th day of April, 1886, leaving a last will and testament, which was duly admitted to probate by the surrogate of Rensselaer county in June, 1886.   The portion of the will chiefly in controversy here relates to the distribution of the proceeds of the sale of the real estate, and is as follows:

"From the proceeds thereof [the real estate] first to make the distribution of my whole estate among my children equal, estimating that my two sons Thomas and Isaac shall have received the eleven thousand dollars by me advanced to my said wife. If the distribution shall not have been made so equal by the distribution of my personal property, and, after making such equality, my said executors shall distribute the residue of the proceeds of my real estate equally among my five above-named children."

At the time of his death he left, him surviving, his widow, Susan Downing, and children, Thomas Downing, Jr., Isaac Downing, children by his second wife, Susan, and Nancy Blackburn and Elizabeth Dunham, children by a former wife.    John J. Downing, a child by his former wife, died intermediate the making of the will in 1881 and the death of the testator.    Thomas Downing, for whom a special provision was made in the will by reason of his intemperate habits, died after the death of the testator, but before the death of his mother, Susan.

The testator by his said will gave all of his property, real and personal, to his executors in trust to distribute his personal property as follows:    Nine-fifteenths among his wife, Susan, and her children, Thomas and Isaac; but provided that the sum of $11,-000, which he states he had theretofore advanced to his wife, Susan, should be considered as a part of the nine-fifteenths of his personal estate to be given to her and her two sons in making such distribution.    The remainder to be divided among his three children by his former wife, Nancy, Elizabeth, and the said John J.    The testator provided that the executors should receive the rents of the real estate, and pay one-third to his wife, Susan, and one-fifth of the remainder to each of his five children during the lifetime of his wife.    He also authorized his executors to sell any and all of his real estate, except the house in which he resided, the use of a portion of which he gave to his wife during her lifetime.    At her death he directed that all of his real estate should be sold (if none had been sold prior to that time), and the proceeds divided equally among his children; but this division of the proceeds of the sale of his real estate was to be made upon the condition that, in making the prior division of his personal estate between the two branches of his family, there had been found sufficient personal estate to divide the same in the proportion of nine-fifteenths to Susan and her children, and six-fifteenths to his children by his first wife, estimating, in that division, that Susan and her sons, Thomas and Isaac, had received said sum of $11,000 towards their share.    But in case there had not been sufficient of the personal estate to equalize it in the proportion above stated between the two branches of his family, which I have treated as classes for reasons hereafter stated, then the proceeds of the real estate should be brought in; and, estimating that Thomas and Isaac, the children of his wife, Susan, then deceased, had received the sum of $11,000 aforesaid, a division or equalization should be made so that each branch of his family should first receive its share in the proportion of nine-fifteenths to six-fifteenths, and the remainder be divided equally among his children. He further provided that, if his son Thomas, who was an inebriate, should reform at or before he attained the age of 35 years, his executors might pay him the principal of his share; otherwise, they should retain the same in trust during his life, and on his death pay the same to his heirs.

In March, 1888, the executors accounted to the surrogate for the personal property of the deceased, and it was found that there re-

mained for distribution only the sum of $3,935.27, and that, bringing in the sum of $11,000 for the purpose of equalization, said sum of $11,000 exceeded nine-fifteenths, the share of his wife, Susan, and her sons, Thomas and Isaac; so the said sum of $3,935.27 was by the decree of the surrogate paid to his daughters by his former wife, Mrs. Blackburn and Mrs. Dunham. On the 7th of January, 1895, Susan Downing died, and by her will, which was duly admitted to probate, she devised all of her property to her son Isaac; her son Thomas having died in 1891, leaving a will by which he devised all of his property (none having been actually received by him from the estate) to his mother. The executors and trustees have sold the real estate of the deceased since the death of Susan Downing, and there remains in their hands for distribution under said will the sum of $7,351.97.

There are several important legal questions, arising under this will, which must be decided before this estate can be distributed. As we have seen, the widow, Susan, and her children took nothing upon the distribution of the personal estate under the decree of the surrogate, and it is insisted by Mrs. Blackburn and Mrs. Dunham, children of the former wife, that interest must now be added to the sum of $11,000, previously advanced to Susan, from the time of the judicial settlement of the estate in 1888 to the present time. If this contention is allowed, they will receive nearly all, if not all, of the balance of the testator's estate. This presents an important question in this case, namely, should interest be allowed upon the sum of $11,000 advanced by the testator to his widow, Susan? I do not find many authorities in this state upon the question of interest upon advancements. The case of Verplanck v. De Went, 10 Hun, 611, is cited as a case in point by counsel for Mrs. Blackburn and Mrs. Dunham. That case simply holds that the proper construction of the will in that case required the sum of $5,000, advanced to a legatee, to be treated as a debt, and it, therefore, should draw interest from the time the debt became due; but it does not support the general proposition that advancements, as such, draw interest. It is settled by numerous authoritative decisions in other states, and also in the courts of England, that nothing is to be allowed for increase or interest on advancements simply as such. See Williams, Ex'rs (7th Ed.) 1606, note G, where numerous authorities are cited in support of this proposition,—among others, Black v. Whitall, 9 N. J. Eq. 572; Osgood v. Heirs of Breed, 17 Mass. 358; Nelson v. Wyan, 21 Mo. 347; McCaw v. Blewit, 2 McCord, Eq. 90; Pigg v. Carroll, 89 Ill. 205. These cases proceed upon the ground that an advancement is no part of the estate to be administered upon, consequently advancements as such never draw interest.

The only case which I have been able to find in this state, except the one cited from Hun, is Ex parte Oakey, reported in 1 Bradf. 281, where the learned surrogate (Bradford) says:

"Nothing is said in the will as to interest, and in the absence of any express direction on that point, no more can be deducted from the share of the legatee than the principal sum advanced."

The surrogate cites Andrewes v. George, 3 Sim. 393, which holds interest may be computed on advancements made by a father to his

children from the time that the property was to be divided among them only.

It appears to be well settled from the authorities cited that interest is not to be charged upon advancements in case of intestacy. See, also, 1 Rev. St. p. 754, § 25, which declares, except when the child stipulates in writing as to the value of property received, "such value shall be estimated according to the worth of the property when given." It follows that, where a person dies testate, no interest can be charged unless the will, by its terms or by necessary implication, requires it. The will in this case directs that the $11,-000 shall be brought in for the purpose of equalizing the testator's estate among his children, but it does not provide, in terms, that interest shall be added, nor do I think the will, by any fair construction of its provisions, requires it. It is apparent that the testator apprehended that the $11,000 advanced to his wife, Susan, might exceed the nine-fifteenths of his personal estate; for he provided that, before an equal division of his property should be made among his five children, the whole of the estate, real and personal, should be brought together, and a division made between them, the two branches of his family, in the proportion above stated, based upon the assumption that the children by his last wife had received the $11,000 advanced to her. It seems to me that this sum of $11,000 is simply used as a factor for the purposes of equalization; in other words, it is only to be used in making the share of Susan's children nine-fifteenths of the entire estate before an equal division should be made among all of his children. There is no claim that the children of the second wife have actually received this $11,000; so that, as to them, it is neither technically nor substantially an advancement.

Again, the testator is supposed to know the situation and value of his property, and the result tends to show that he did. It is obvious, also, that he supposed he had sufficient property to make a substantial division among his five children, after his property had been equalized and divided in the proportion of nine to six (including the $11,000) between the two branches of his family, for he provided that one of his children by his last wife, Thomas Downing, should have his share remain in the hands of his (testator's) trustees, under a certain contingency, during his lifetime, and the income thereof paid for his maintenance and support,—a provision which would be unnecessary if he intended that the provision which he had made for his wife should draw interest until the ultimate division of his property, since he obviously contemplated (by the provision he made for her) that her life would be protracted many years, in which case, by the addition of interest, there would be nothing, or substantially nothing, to divide among her children after her decease. This provision for his wife was doubtless provided so that the income thereof should furnish her a support during her life, and it would be manifestly unjust, and not within the intention of the testator, to charge his children by her with the income which he had provided for her support. I am quite clear that it is not within the intent of the

testator, as disclosed by his will, to have interest charged upon the said $11,000 upon the present division of his estate.

It has been suggested that interest at least should be charged from the death of his wife, Susan, which occurred January 7, 1895, at which time the division of his estate was to be made. I think the better view is that the division contemplated was the division to be made by the executors on the judicial settlement of their accounts, proceedings for which were instituted by the executors as soon as practicable after the sale of the real estate. I am also of the opinion that the contention of Isaac Downing, a son of the last wife, that the amount received by the children of the first wife, Mrs. Dunham and Mrs. Blackburn, upon the division of the personal property, January 21, 1888, of $3,935.27 under the decree of the surrogate, should draw interest from that date, is untenable. This amount was paid to them in pursuance of the will by a decree of the surrogate, and, although it is to be considered as a part of the estate in the ultimate division, for the purpose of making their six-fifteenths of the estate before ultimate division shall be made among all the children, yet I see no reason why it should draw interest. It is not an advancement. It was received by them under a decree of the court, and constitutes so much of their share in the ultimate division of the estate. It is not a debt which they owed the estate, but is theirs of right. I do not think it was contemplated by the testator that these children should pay interest upon the amount they received on the distribution of the personal estate, nor do I find any principle of law which requires them to make such payment. The claim of interest on said sum is disallowed.

Another contention on the part of Isaac Downing is that the share of Thomas Downing, Jr., his brother, who died before the death of his mother, Susan, and, consequently, before receiving any portion of this estate, leaving a will by which he devised said interest to Isaac, should be paid to him. I cannot agree with this contention. In the first place, the will plainly provides that, in case the said Thomas Downing, Jr., should not be paid the principal of his share during his lifetime, that the executors of Thomas Downing, Sr., should pay the share of the said Thomas Downing, Jr., to "his heirs at law," who are the said Isaac and his two half-sisters. The statute provided that children of half blood shall take equally with those of the whole blood. 1 Rev. St. pt. 2, c. 2, § 15. But it is insisted by the said Isaac that the individual interest of Thomas Downing, Jr., became vested on the death of his father, and was, consequently, alienable and devisable during the lifetime of his mother, Susan, and that the same came to him, the said Isaac, under the will of his mother. The real estate in this case is given to the executors in trust to receive the rents and profits of the said real estate and divide the same, as provided, during the lifetime of the widow, and upon the further trust to sell the real estate and divide the proceeds among the heirs of the said Thomas Downing. The gift of the title to the real estate to the executors, with the right to receive the rents and profits, with direction to sell and divide the proceeds of the real estate upon the

death of the widow among the several persons named, created a power in trust, general and imperative (1 Rev. St. pt. 2, c. 1, tit. 2, art. 3, §§ 74, 76, 79, 94), and suspended the vesting of any interest in the proposed beneficiaries until the power was executed. Delaney v. McCormack, 88 N. Y. 174, 183; Dana v. Murray, 122 N. Y. 604, 612, 26 N. E. 21.

The case of Delafield v. Shipman, 103 N. Y. 463, 9 N. E. 184, is much in point. In that case the court, through Earl, J., say:

"The whole income is not given to the children during the life of the widow, and during her life the estate is vested in the trustees. There is no direct gift to the children, but simply a direction for a division among them after the death of the widow."

In such case the title is not vested in the children during the life of the widow.

In the case of Warner v. Durant, 76 N. Y. 133, Folger, J., says:

"Where there is no gift but by a direction to executors and trustees to pay or divide and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives."

In the case of Smith v. Edwards, 88 N. Y. 92, Finch, J., giving the opinion of the court, says:

"It has been often held that, if futurity is annexed to the substance of the gift, the vesting is suspended; * * * that, where the only gift is in the direction to pay or distribute at a future time, the case is not to be ranked with those in which the payment or distribution only is deferred, but is one in which time is of the essence of the gift."

This leads to the conclusion that the individual share of Thomas Downing, Jr., in the remainder of the estate, if any shall be due him, must be equally divided among his brother and half-sisters.

The remaining question is what becomes of the share of John J., who died before the death of the testator, leaving no descendants. Ordinarily, under a well-settled rule of construction, when the limitation creates a tenancy in common, the gift being to several persons by name, and not to them as a class, the share of the one dying before testator, or before the time when it vests, is lapsed, and should be distributed as intestate estate. Downing v. Marshall, 23 N. Y. 366; Gill v. Brouwer, 37 N. Y. 549; Jarm. Wills, 538. While the law infers a personal legacy to each child, when there are several, from a specification of them by name, yet the rule is not inflexible. The substantial intent of the testator must control, rather than the words. Hoppock v. Tucker, 59 N. Y. 203, 208; Stedman v. Priest, 103 Mass. 296. I am of the opinion, from an examination of the will, in connection with the conceded facts in this case, as I have above indicated, that, as to the first division (the personal and so much of the proceeds of the real estate as may be necessary to complete it), the testator intended to make a division between the two branches of his family by class, so that the death of John J. occasioned no lapse, although he was made a tenant in common, since the members of the class antecedently dying were not actual objects of the gift, and the entire subject of the gift vested in the survivors. Downing v. Marshall, supra. As to the present division of the remainder of the estate, the language of the will is quite clear

that the testator intended it to be divided among his children as individuals. The language is, "The remainder to be divided equally among my five children above named." In which case it follows that the share of John J. in the remainder either lapsed and fell into the body of the estate, and as to that portion the testator died intestate, or that it became a portion of the remainder to be divided among testator's children. In either event it would take the same direction, and be ultimately divided among the remaining children of the deceased.

Decreed accordingly.