**BOAL et al. v. METROPOLITAN MUSEUM OF ART OF THE CITY OF NEW YORK et al.**

(Circuit Court of Appeals, Second Circuit. March 17, 1924.)

No. 51.

1. **Wills ⬤⟶669—Provision in favor of trustee in invalid trust held void.**

A clause of a will which provisionally bequeathed certain property to a trustee, read in connection with the deed of trust executed on the same day, intended to remain in effect after the testator's death and which reserved the right in the trustor during his lifetime to change or abrogate any of the trusts created, *held* void under the statute of wills of Rhode Island, as an attempt to create a power to change the testamentary disposition of property without the formal statutory requisites of a will or codicil.

2. **Wills ⬤⟶439—Testator's intention must be asertained, if possible, and given effect, if lawful.**

In all cases involving the meaning of a will, it is a cardinal rule that the intention of the testator must be ascertained, if possible, and effect given to it provided it does not contravene an established rule of law or public policy.

3. **Wills ⬤⟶849—Where intention of testator cannot lawfully be carried out, property descends according to law.**

Where the intention of a testator, as expressed in his will, cannot be carried out, because contrary to law or public policy, no other intention may be imputed to him, and his property descends to those who would take by law, independent of all intention.

4. **Wills ⬤⟶439—Court cannot determine testator's intention by conjecture.**

A will is never to be construed by a mere conjecture as to the testator's intentions.

5. **Wills ⬤⟶473—Interdependent provisions fail entirely where one is illegal.**

Where testamentary provisions included in a general scheme are inseparably connected, and so interdependent that an illegal provision cannot be disregarded and the other carried out without violence to the intent of the testator, the disposition fails entirely.

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**6. Wills ⬤⟹625—Alternate remainders in personal property.**

A clause of a will bequeathing an art collection to a museum of art, subject to a life estate therein, but with a proviso that, should there be a deficiency in a trust fund, so much of the collection was bequeathed to the trustee for sale as should be necessary to make up the deficiency, *held* an attempt to create alternate remainders; the preferred object being the trust fund.

**7. Remainders ⬤⟹12—May be created in personal property.**

Under the modern rule, a remainder may be limited after a life estate in personal property.

**8. Remainders ⬤⟹4—Subject to condition held contingent.**

In order that a future estate may be regarded as vested, there must be some one in being who has the immediate right to the possession of the property on the determination of all the preceding estates, and it is contingent if, in order for it to come into possession, the fulfillment of some condition precedent, other than the determination of the precedent freehold estate is necessary.

**9. Wills ⬤⟹634(16)—Remainder held not vested, but contingent.**

A bequest of an art collection to a museum of art, subject to life estate therein, but with a proviso that, should there be a deficiency in trust funds created by the testator, so much of the collection was bequeathed to the trustee for purposes of sale as necessary to make up the deficiency, or the museum might make up the deficiency and receive the entire collection, *held* not to give the museum a vested, but a contingent, remainder.

**10. Wills ⬤⟹625—"Executory devise or bequest" defined.**

An "executory devise or bequest" is a limitation of a future estate or interest created by will in such manner that no estate vests on the death of the testator, but only on some future contingency, and includes every devise of a future interest which is not preceded by an estate of freehold created by the same will, or which, being so preceded, is limited to take effect before or after, and not at, the expiration of such prior estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Executory Devise.]

**11. Wills ⬤⟹473—Invalidity of preferred alternative remainder does not entitle the other remainderman to take.**

The failure, for inherent invalidity, of that one of two alternative remainders which, as events turned out, was the one the testator intended to take effect, does not enable the other remainderman to have what the testator never intended it to have.

**12. Wills ⬤⟹855—Effect of failure of limitation over is to leave absolute estate in first taker.**

By the American law the failure of a limitation over after a fee cannot operate as a defeasance, but leaves an absolute estate in the first taker.

**13. Wills ⬤⟹625—Executory bequests are not vested until they take effect in possession.**

Under the modern rule, which permits future estates in tangible personal property by way of executory bequests, such interests are not vested until they take effect in possession.

**14. Wills ⬤⟹625—Provision held to create executory bequest.**

A clause of a will bequeathing an art collection to a museum of art, subject to a life estate, with a proviso that, if there should be a deficiency in a trust fund created by testator, there was bequeathed to the trustee for purposes of sale sufficient of the articles to meet the deficiency, created an executory bequest to the museum, which was not entitled to possession on termination of the life estate, but such right was dependent on payment of the trust deficiency, and where the deficiency existed, and was not made good, the bequest to the museum never became effective, though the bequest to the trustee failed because of the illegality of the trust.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**15. Wills** &⇒**821(1)—Effect of imposing "charge" on property devised or bequeathed.**

A "charge" is an obligation imposed on a person or estate, and when imposed on property devised or bequeathed, creates a lien to be satisfied out of the specific property charged. but does not give to the one in whose favor it is raised either title, right of possession, or power of sale, except as a sale may be accomplished by foreclosure.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Charge.]

**16. Wills** &⇒**821(1)—Provision held not to create a bequest subject to a charge.**

A clause of a will bequeathing an art collection to a museum of art, subject to a life estate. with a proviso that, if there should be a deficiency in a trust fund created by testator, "I give and bequeath" to the trustee for purposes of sale sufficient of the articles to make up the deficiency, *held* not a bequest to the museum, subject to a charge in favor of the trust fund.

**17. Wills** &⇒**849—Failure of charge on bequest, because of illegality, does not inure to benefit of legatee.**

Where a technical charge is created on a bequest, for the purpose of paying a gift, which fails, not by reason of lapse or of some contingency which the testator may have had in mind, but by reason of inherent illegality, the next of kin or residuary legatee takes, and not the specific legatee.

**18. Wills** &⇒**858(2)—Under Rhode Island statute, specific bequests, which fail because of illegality, fall into residuary estate.**

Gen. Laws R. I. 1909, c. 254, § 7. providing that, where a specific gift made by will is void by reason of being contrary to law or otherwise incapable of taking effect it shall be included in the residuary devise, if any, contained in the will, as construed by the highest court of the state, applies to bequests of personal property.

**19. Wills** &⇒**865(1)—Personal property undisposed of by residuary clause is subject to statute of distribution.**

Every will is subject to the rule that any personal property remaining undisposed of by a residuary clause will be distributed under the statute of distributions.

**20. Wills** &⇒**858(1)—Lapsed or void legacy falls into residuary estate.**

Unless a contrary intent appears in the will, a lapsed or void legacy falls into the residue of the estate, and goes with it, whether the gift failed by lapse, invalid disposition, or other accident.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by Theodore Davis Boal, as executor of the will of Annie B. Davis, deceased, and another against the Metropolitan Museum of Art of the City of New York and another. From a decree dismissing the bill, complainants appeal. Reversed.

For opinions below, see 292 Fed. 303.

William E. Carnochan and Herbert Parsons, both of New York City (Theodore C. Richards, of New York City, Warren H. Atwood, of Ayer, Mass., and Lyman K. Clark, of Boston, Mass., of counsel), for appellants.

De Forest Bros., of New York City (Robert Thorne, of New York City, of counsel), for appellee Metropolitan Museum of Art.

Dorman & Dana, of New York City (William R. Tillinghast, of Providence, R. I., William R. Dorman, of New York City, James C.

Collins, of Providence, R. I., and Zachariah Chafee, Jr., of Cambridge, Mass., of counsel), for appellee Rhode Island Hospital Trust Co.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

ROGERS, Circuit Judge. This case involves the last will and testament of Theodore M. Davis, who at the time of his death on February 23, 1915, had his domicile at Newport, in the state of Rhode Island. His will was dated August 14, 1911, and a codicil thereto was dated October 4, 1911, and both were admitted to probate in the Newport probate court. Letters testamentary were issued to Thomas L. Manson, one of the two executors named in the will; the other person named, Herbert Parsons, having declined to qualify. Mr. Manson died in May, 1918, without having fully administered the estate, and on May 27, 1918, the defendant Rhode Island Hospital Trust Company was appointed administrator with the will annexed. Mr. Davis was survived by his widow, Annie B. Davis, and by the plaintiff Kate Atwood, a half-sister, and Gertrude Galloway, his sister, who were his only heirs and next of kin. Thereafter both Mrs. Davis and Mrs. Galloway died. The plaintiff Theodore Davis Boal is the executor of the will of Mrs. Davis, and the plaintiff Kate Atwood is the administratrix of the estate of Mrs. Galloway.

[1] The seventh paragraph of the will of Mr. Davis, and the one involved herein, is as follows:

"Seventh. Subject to the life estate therein of Mrs. Andrews, and with proviso hereinafter made, I give and bequeath to 'the Metropolitan Museum of Art' of the city of New York, all the pictures and frames not herein otherwise disposed of, all works of art in bronze, silver, metal, marble, ivory or other materials, pottery, antique rugs, velvets, silks, tapestries, antique glass, and the Egyptian collection of any and all kinds which may belong to my estate. I request the Museum when it shall come into possession of the same, to exhibit in cases by themselves the Egyptian collection and all other collections which in the opinion of the trustees are suitable for cases. I also request that the pictures be associated if hung in one room, but if hung according to their schools they should be grouped; and I request that my entire collection herein given shall be designated as the 'Theodore M. Davis Collection.'

"The foregoing bequest to the Metropolitan Museum of Art is subject, however, to the condition and I do hereby will, provide, and declare, that if the principal of my trust estate held by the Rhode Island Hospital Trust Company of Providence in said state of Rhode Island under trusts created by me, shall not be sufficient to make each part into which such principal is to be divided upon the decease of the survivor of my said wife and the said Emma B. Andrews equal at least to fifty thousand dollars ($50,000) then I give and bequeath to said Rhode Island Hospital Trust Company for the purposes of sale, and at either public or private sale, sufficient of said pictures and articles to realize a net amount equal to the deficiency in said trust estate,—that is to say, sufficient to increase the value of the principal of my said trust estate so that each part thereof shall equal at least fifty thousand dollars ($50,-000)—the Metropolitan Museum of Art, however, to have the right to pay any such deficiency and thereby avoid the sale of any of said pictures and articles; and should the time for delivery of said pictures and articles to the Metropolitan Museum of Art arrive before the time for the distribution of said trust estate by said trust company, the said Metropolitan Museum of Art, before taking possession of said pictures and articles, shall enter into an agreement with said trust company to make good any deficiency aforesaid or turn back to said trust company sufficient articles and pictures for sale as aforesaid."

298 F.—57

The ninth paragraph of the will, which is the residuary clause, is as follows:

"Ninth. I give, devise and bequeath all the remainder of the property, real and personal, of which I die possessed or over which I have any power of disposition, including any of the foregoing gifts which shall fail for any reason, but excepting the remainder in my real estate in said Newport after the decease of my said wife and the said Emma B. Andrews, to my said executors, or any duly appointed administrator of my estate, in trust nevertheless, to convert the whole of said property into cash as soon as reasonably possible, with power for this purpose to sell the same or any part or parts thereof at either private or public sale, and the net proceeds of such sale or sales to pay over to the Rhode Island Hospital Trust Company to be held, managed and disposed of as a part of the principal of the estate and property held by it in trust for my life and the lives of others in the same manner as though the proceeds of such sales had been deposited by me as a part of said trust estate and property; and the receipt of said trust company shall be a full discharge to my said executors or administrators relieving them from all further liability or accountability in respect thereof. And I devise to the said Rhode Island Hospital Trust Company after the deaths of my said wife and the said Emma B. Andrews the estate in said Newport hereinbefore given to them for their lives, but in trust nevertheless for said trust company to convert said estates into cash as soon as reasonably possible after it becomes entitled to the possession of said estate, hereby empowering said trust company in the discretion of its officers or committee having the charge of trust estates with the approval in writing of the said Thomas L. Manson and Herbert Parsons or the survivor of them so long as both or either of them is living, to sell said estates from time to time at either private or public sale, and to add the net proceeds of any such sale or sales to the principal of the trust estate and property then held by it under the trusts theretofore created by me, and to divide and distribute said net proceeds to the same persons and in the same proportions as they are entitled to the principal of my said trust estate under the terms of said trusts; and no purchaser from my said executors or administrators, or from said trust company, shall be under any obligation to inquire into the propriety or regularity of any such sale or sales or to see to the application of the purchase moneys, but all transfers and conveyances from my said executors and administrators, and from said trust company, shall give to the purchaser as good, valid and sufficient titles to said properties, real and personal, as I die possessed of, without other act by the purchasers than the payment of the purchase moneys."

The claim of the plaintiffs is that the seventh clause is void, and that they, admittedly entitled to whatever portion of the testator's estate he did not validly dispose of by his will, are entitled to the Egyptian collection and other works of art, collectively referred to as the art collection, which the testator undertook, unsuccessfully, to dispose of in the seventh clause.

The bill alleges that the art collection is, at the time the suit is brought, within the Southern district of New York and is held by the Metropolitan Museum of Art. The interest of the Metropolitan Museum of Art and that of Rhode Island Hospital Trust Company, the defendants herein, rests upon the seventh and ninth clauses above set forth. The amended bill of complaint asked: That the claim of the complainants to the art collection be enforced, and that the incumbrances, liens, and clouds upon the title to the collection asserted by the defendants be removed. That the court decree that the bequest of the art collection sought to be made by the seventh paragraph of the will fails, and that the collection pursuant to the ninth paragraph belongs to the residuary estate, and as such belongs one-fourth to the

complainant Kate Atwood individually, and one-fourth to her as administratrix of the estate of Gertrude Galloway, deceased, and one-half to the complainant Theodore Davis Boal as executor of the will of Annie B. Davis, deceased. That the Metropolitan Museum of Art be directed by the decree to transfer and deliver the art collection to the complainants upon receiving their receipt therefor.

The bill also asked that the court enjoin the Metropolitan Museum of Art, pending a determination of the proceedings, from transferring the art collection or any part thereof from the state of New York or from its possession, other than to the complainants. The court below entered a decree dismissing the bill upon the merits.

Before proceeding further it should be stated that on August 14, 1911, the date when Mr. Davis executed his will, but before its execution, he signed a trust deed dated that day. By this trust deed, as counsel for the plaintiffs have pointed out, Mr. Davis provided for certain trusts of which he thereby appointed the defendant the Rhode Island Hospital Trust Company trustee. Two days later, on August 16, 1911, he acknowledged the execution of this trust deed and delivered it to the trust company as trustee thereunder, together with certain securities, to be held, managed, and disposed of in accordance with its provisions and such other directions as he might thereafter make, pursuant to a power to make them therein reserved. On the following day, August 17, 1911, the trust company in writing accepted the deposit with it of the trust securities and agreed to carry out the trusts provided for in the deed.

By the provisions of the deed the trust company, as trustee thereunder, was to hold and manage the trust property, collect the income from it, and pay the same, less expenses, to Davis during his life. Upon his death provision was made for the payment of certain specified amounts to certain specified persons and for the establishment of two trust funds to pay two certain annuities. The deed further provided that after the death of Davis the trust company should continue to hold all of the remainder of the trust estate not required for the payments to be made upon his death, and pay the net income from it in equal shares to his widow, Annie B. Davis, and Emma B. Andrews, with the provision that, upon the death of either, so much, but only so much, of one-half of the principal of such remainder as the law might require to become vested should vest in the persons thereinafter designated to receive such principal and in the proportions so designated. The deed further provided, however, that the trustee, on the death either of the widow or of Mrs. Andrews, should, so far as possible, accumulate the income to which the one so dying would, if living, have been entitled, and that on the death of the survivor the principal of the trust estate and all accumulations of income should be divided among, and paid to, a large number of persons in certain specified parts, 46 or 47 in all. Powers of investment and other powers were conferred upon the trustee by the trust deed which concluded with the following clause:

"Provided, however, and the deposits made herewith and all future deposits as hereinbefore authorized, and the trusts hereby declared, are to be considered as made and declared to be, and are made and declared, subject to the condition that I may at any time or from time to time during my life revoke any or all of the trusts herein declared and repossess myself of all of

said property or any part or parts or accumulations thereof as my own sole property freed of all of said trusts, or may at any time or from time to time add to, annul, change or modify in any respect whatsoever any of the trusts or powers hereby created or conferred, or any of the dispositions of income or of principal of my said trust estate."

Pursuant to the power of revocation and modification thus reserved, the trust deed was twice amended by written instrument. By the first of these amendments, that executed on October 5, 1911, Davis provided for certain additional payments out of the capital of the trust fund to be made upon his death. By the second, that dated October 17, 1913, he provided for one such additional payment, and canceled the direction to pay $3,000 to one Amelia Burgnon, named in the original deed as a distributee to receive that amount on his death. It also is to be stated that, in a suit brought in the District Court of the United States for the District of Rhode Island by the plaintiffs herein, and in which the defendants herein were parties defendants, it was decided in the Circuit Court of Appeals for the First Circuit that the trust sought to be created by Davis by the ninth clause of his will was void, as being in violation of the Rhode Island statute of wills; that by the plan disclosed by the will and the deed together Davis had attempted to create prospectively for himself a power to dispose of his residuary estate, otherwise than by an instrument executed as a will or codicil with the formalities required by the statute of wills of Rhode Island, and in violation thereof; that the Rhode Island Hospital Trust Company as administrator held the personal property of the testator on a resulting trust, to distribute the same to the widow and next of kin and their successors in title conformably to the laws of Rhode Island—one-fourth to the plaintiff Kate Atwood individually, and one-fourth to her as administratrix of the estate of Gertrude Galloway, and one-half to the plaintiff Theodore Davis Boal as executor of the will of the testator's widow, Annie B. Davis. Atwood v. Rhode Island Hospital Trust Co. (C. C. A.) 275 Fed. 513, 24 A. L. R. 156, certiorari denied 257 U. S. 661, 42 Sup. Ct. 270, 66 L. Ed. 422.

In the suit now before the court the plaintiffs make the same claim against the seventh paragraph of the will and the art collection therein disposed of which they successfully made in the First circuit with respect to the ninth paragraph and the residuary estate therein disposed of. In other words, the claim is that the testator, in seeking as he did to dispose of the art collection by bequeathing to the defendant trust company what was needed of it to realize an amount which would increase the principal of his trust estate, so that each of the parts into which it was to be divided for ultimate distribution should equal at least $50,000, and what was not so needed to the defendant the Metropolitan Museum of Art, he attempted to create for himself a power prospectively to change the testamentary disposition of his art collection, otherwise than by an instrument executed as his will or codicil with statutory formalities; that the attempt to do this was invalid, and that complainants are therefore entitled to the art collections, and in the same shares in which it was held in the First circuit that they were entitled to the residuary estate and for the same reasons.

The plaintiffs claim, and the court below held, and we do, that for the reasons stated in the decision in the First circuit, the provisions of the seventh paragraph in favor of the Rhode Island Trust Company are void. So that the sole question is as to who is entitled to take the art collection as a result of the admitted failure of the attempted gift of it to the trust company. The plaintiffs appellants, representing the rights of the testator's surviving widow and next of kin, claim that it belongs to them as intestate property by reason of the direction in the ninth paragraph that "any of the foregoing gifts which shall fail for any reason" shall be included in the residue already awarded to them as not having been validly disposed of. The Metropolitan Museum of Art, one of the defendants and an appellee, contends that the only effect of invalidating the gift of the collection to the trust company is to give it to the museum in toto. The trust company, abandoning any claim on its own part to the collection, concedes the gift to the museum; and the District Court has held that the museum is entitled to take the whole of the collection.

[2] At the argument of the case much was said concerning the testator's intentions. In all cases involving the meaning of a will it is of course a cardinal rule that the intention of the testator must be ascertained, if possible, and effect given to it, provided, however, the intention does not contravene an established rule of law or public policy. In 1832, in Smith v. Bell, 6 Pet. 68, 75 (8 L. Ed. 322), Chief Justice Marshall stated the rule as follows:

"* * * The intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. * * * This principle is generally asserted in the construction of every testamentary disposition. It is emphatically the will of the person who makes it, and is defined to be 'the legal declaration of a man's intentions, which he wills to be performed after his death.' * * * These intentions are to be collected from his words, and ought to be carried into effect, if they be consistent with law."

See, too, Hardenberg v. Ray, 151 U. S. 112, 126, 14 Sup. Ct. Rep. 305, 38 L. Ed. 93; Frelinghuysen v. New York Life Ins. Co., 31 R. I. 150, 77 Atl. 98, Ann. Cas. 1912B, 237.

[3] There can be no dispute in this case as to what the testator's intentions were. But his intentions, as he expressed them, cannot be carried out, if they involved an illegal reservation of the power to direct the disposition of his property after death without observing testamentary requirements. If such a power was reserved, the testator made no will as to the property herein involved. The courts have no power to make a will for him, and they have no right to divert his estate from the channels in which the statute of distributions prescribes that it shall go. In such a case the law is now as it was stated by Lord Eldon to be in 1815 in Tregonwell v. Sydenham, 3 Dow. 194, 216:

"The policy of the law will not permit the uses for which the testator intended it to take effect, and in such a case, in the absence of any expression of intention on the part of the testator with respect to a purpose which the law will allow, the doctrine of law is this: That he shall take the interest, who takes independent of all intention, and on whom the law casts it."

[4] In the court below judgment was entered not in accordance with the intention of the testator as he expressed it in the will, but in ac-

cordance with the intention which the District Judge conjectured he had. A will is never to be construed by a mere conjecture as to the testator's intentions. Bailey v. Bailey, 236 Mass. 244, 128 N. E. 29; Connor v. Gardner, 230 Ill. 258, 82 N. E. 640; McCoury v. Leek, 14 N. J. Eq. 70. By the seventh clause of his will the testator undertook to dispose of his art collection by bequeathing to the trust company so much of it as might be needed to realize an amount which would increase the principal of his trust estate, so that each of the parts into which it was to be divided for ultimate distribution should equal at least $50,000, and what was not so needed he bequeathed to the defendant the Metropolitan Museum of Art. In so doing he attempted to create for himself a power prospectively to change the testamentary disposition of his art collection, otherwise than by an instrument executed as his will or codicil with statutory formalities. The attempt to do this can no more succeed in the case of the art collection than it did in the case of the residuary estate.

The only real question on this appeal, conceding the seventh clause to be void, as we hold it to be, is as to who shall take the art collection as a result of the failure of the attempted gift of it to the trust company. The plaintiffs contend that the art collection belongs to them as intestate property by virtue of the direction in the residuary clause that "any of the foregoing gifts which shall fail for any reason" shall be included in the residue. The Metropolitan Museum of Art, the defendant, claims, as already stated, that the only effect of invalidating the gift of the collection to the trust company is to give it in toto to the museum. The court below, in upholding the defendant's contention, reached its conclusion upon the theory that the provisions of the seventh clause in favor of the trust company were intended to create, not a direct gift at all, but only a condition subsequent, or a pecuniary charge; the court apparently not being quite sure whether the words employed amounted to a condition subsequent or a pecuniary charge, being satisfied, however, that, if it was not a condition subsequent, it was a pecuniary charge.

We have already expressed the opinion that the seventh clause is void, because the testator attempted to create for himself a power prospectively to change the testamentary disposition of his art collection otherwise than by an instrument executed as his will or by a codicil properly witnessed. As was said by Sir George Parker in Johnson v. Ball, 5 De G. & Sm. 85, 91:

"A testator cannot by his will prospectively create for himself a power to dispose of his property by an instrument not duly executed as a will or codicil."

It was this rule that led the court in Atwood v. Rhode Island Hospital Trust Co. (C. C. A.) 275 Fed. 513, 24 A. L. R. 156, to declare the ninth clause invalid.

[5] We are also convinced that the entire seventh clause is invalid, on the ground that the gift to the museum and to the trust company are so interdependent that the clause fails altogether. Where testamentary provisions included in a general scheme are inseparably connected and dependent upon each other, the valid part will fail with the

invalid. If they are so interdependent that the illegal disposition cannot be disregarded, and the other carried out without doing violence to the intent of the testator, the disposition fails entirely. Bailey v. Buffalo, etc., Co., 213 N. Y. 525, 107 N. E. 1043; Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917; Hewitt v. Green, 77 N. J. Eq. 345, 77 Atl. 25; Bristol v. Bristol, 53 Conn. 242, 5 Atl. 687; Re Kountze, 213 Pa. 390, 62 Atl. 1103, 3 L. R. A. (N. S.) 639, 5 Ann. Cas. 427.

[6] It appears plain to us that the museum was not the preferred object of the testator's bounty. In other words, it was not his "primary legatee." Individuals were the main object of his concern. His foremost interest indisputably was that each of the parts which he gave to individuals by the trust deed should amount to $50,000. Unless and until that purpose was accomplished, the museum was not intended to have the art collection or any part of it.

In our opinion the seventh clause was not an executory bequest, but an attempt to create alternate remainders, sometimes called "contingencies with a double aspect," or "gifts with a double contingency." In this case the contingency consisted in the making up or non-making up of the deficiency which existed, and is admitted to have existed, not only when the testator died, but also at the time when the precedent particular life estate came to an end.

[7] At common law an interest in personal property by way of remainder could not be created; but it is now well established that a remainder may be limited after a life estate in such property. Smith v. Bell, 6 Pet. 68, 8 L. Ed. 323; Hoare v. Parker, 2 T. R., 376. While a remainder cannot be limited after a fee simple, a will may, by what are known as alternative remainders or remainders with a double aspect, limit two fees concurrently by way of remainder in such manner that, if one fails to take effect, the other may take effect in substitution therefor. In Hennessy v. Patterson, 85 N. Y. 91, 98, the court states that:

"Alternative estates, or contingencies with a double aspect, as they are sometimes called, were permissible and recognized before the Revised Statutes expressly authorized their creation. They were unobjectionable, because only one could vest, and the happening of the contingency merely substituted one for the other, and in no respect prolonged any restraint upon alienation."

And see Luddington v. Kime, 1 Ld. Raymond, 203; Doe v. Holme, 2 W. Black. 777; Thomas v. Castle, 76 Conn. 447, 56 Atl. 854.

When one of the remainders vests, all rights under the other remainder are forever excluded. Woollen v. Frick, 38 Md. 428. And in Fearne on Remainders (4th Am. from 10th London Ed.) p. 373, referring to Luddington v. Kime, supra, it is said that that case held:

"That the first remainder was a contingent remainder in fee to the issue of A., and the remainder to B. was also a contingent fee, not contrary to, or in any degree derogatory from, the effect of the former, but by way of substitution for it. And this sort of alternative limitation, was termed a contingency with a double aspect. For, if A. had issue male, the remainder was to vest in that issue in fee; but, if A. had no issue male, then it was to vest in B. in fee; and these were limitations of which the one was not expectant upon, and to take effect after, the other, but were contemporary, to commence from the same period, not indeed together, but the one to take effect in lieu of the other, if that failed."

Under the seventh clause the gift to the museum was a gift of only what remained of the art collection after the portion of it given to the trust company had been fully satisfied. A careful reading of the seventh and ninth clauses, which must be read together for purposes of construction, discloses that the dominant purpose of the testator was to assure the beneficiaries of the inter vivos trust $50,000 each before the museum should take anything. Unless and until that purpose was effected the museum was not to have title to the art collection or to any part of it. To that purpose everything else was subordinate and secondary, and it appears that the principal of the trust fund never was sufficient to make each part $50,000.

We cannot accept the conclusion of the learned District Judge that the testator meant the museum to be the primary legatee. It appears to us that he meant no such thing, but quite the reverse. The gift to the trust company for the benefit of individuals was preferential, and the gift to the museum was secondary only. To hold otherwise is to disregard the words with which the seventh clause begins:

"Subject to the life estate therein of Mrs. Andrews, and with the proviso hereinafter made, I give and bequeath to" the museum, etc.

It was as though the testator had expressed his wish as follows:

"Subject to the life estate therein of Mrs. Andrews I give and bequeath to the trust company so much of my collection as may be needed to make up each share of my trust estate to $50,000, and what is left thereof I give and bequeath to the museum."

[8] The seventh clause does not contain an unqualified gift to the museum of all the art collection. But the argument against the plaintiffs herein assumes that it does, and that these plaintiffs are seeking to defeat it. That is not this case, but quite the reverse of it. No unqualified gift of the art collection was made to the museum. It was made subject to the proviso, and the proviso defined and measured, or bounded, the extent of the grant. See Webb v. Grace, 2 Phillips Ch. 701; Phillips v. Davies, 92 N. Y. 199, 204.

The gift of the art collection to the museum cannot be regarded as creating a vested interest. It seems to us clear that that gift had annexed to it the condition that it was to take effect only provided the deficiency was made up. The claim that the museum had a vested remainder in the collection is not supported by any of the rules for determining whether such a remainder exists. Instead of the remainder being vested, it is, on the contrary, contingent. In order that a future estate may be regarded as vested, there must be some one in being who has the immediate right to the possession of the property on the determination of all the preceding estates. It is contingent, if in order for it to come into possession the fulfillment of some condition precedent other than the determination of the precedent freehold estate is necessary. Gray on Perpetuities (3d Ed.) § 101, p. 80. In McIntyre v. McIntyre's Estate, 156 Mich. 240, 242, 120 N. W. 587, the court said:

"The grantee's right to possession was inevitable on the happening of events which were inevitable. He had, therefore, a vested interest."

[9] In the case now before the court the museum's right to the art collection was not dependent solely upon the determination of the life

estate of Mrs. Andrews. In addition to that it was necessary for the museum to fulfill a condition precedent; i. e., the making up of the trust deficiency, which it is conceded existed. Until that was made up the museum did not have "an immediate right to the possession" of the art collection. The making up of that deficiency was the "event on which the gift in remainder was limited to take effect," and that event has never yet happened—the deficiency never having been made up. We confess ourselves quite unable to understand how it can be said that a remainder so clearly contingent upon the fulfillment of a condition other than the determination of the precedent life estate can be regarded as a vested remainder.

The contingent character of the gift to the museum is also emphasized by the provision at the end of the seventh clause. It was there provided that, if Mrs. Andrews died before the death of Mrs. Davis, the testator's wife, the museum should in no event, whatever the then amount of the trust fund might be, receive the collection or any part of it, unless it should "enter into an agreement with the said trust company to make good any deficiency aforesaid or turn back to said trust company" sufficient of the art collection to make good the deficiency, the existence and extent of which could only be definitely ascertained when the trust estate should ultimately become distributable, which was to be on the death of the survivor of his wife and his sister, Mrs. Andrews.

[10] An executory devise or bequest is such a limitation of a future estate or interest created by will in such manner that no estate vests on the death of the testator, but only on some fuure contingency. It is said to include every devise of a future interest which is not preceded by an estate of freehold created by the same will, or which being so preceded is limited to take effect before or after, and not at, the expiration of such prior estate. It is allowed to give effect to the intention of the testator in making a future disposition of property which could not take effect as a remainder. Chancellor Kent, in 4 Comm. 263, speaking of future contingent estates, lays it down that:

"If the limitation by will does not depart from those rules prescribed for the government of contingent remainders, it is, in that case, a contingent remainder, and not an executory devise."

And he quotes the observation of Lord Kenyon in Doe v. Morgan, 3 Term, 763, that the rule laid down by Lord Hale had uniformly prevailed without exception, that:

"Where a contingency was limited to depend on an estate of freehold, which was capable of supporting a remainder, it should never be construed to be an executory devise, but a contingent remainder."

And see St. Amour v. Rivard, 2 Mich. 294; Demill v. Reid, 71 Md. 175, 188, 17 Atl. 1014.

In the decision of this case it is of the utmost importance that there be no confusion of thought between a remainder and an executory interest. The distinction is clearly and correctly stated in 21 Corpus Juris, 988, where it is said:

"Double Contingencies.—The rule that a remainder cannot be limited after a fee simple forbids, neither at common law nor under modern statutes, the

creation of limitations variously called contingencies with a double aspect, or gifts on a double contingency, or gifts or devises on two alternative contingencies or alternative or substitutional remainders, whereby two or more remainders in fee simple are created as substitutes or alternatives the one for the other; that is, 'on such contingencies that only one of the remainders can possibly vest. As distinguished from successive remainders, each of such fees is a remainder in regard to the particular estate, but none is a remainder in regard to any other of them; and as distinguished from a vested remainder subject to a condition subsequent with a limitation over, it is a true remainder, while the latter limitation over is not a remainder, but an executory interest. The failure to note this distinction has resulted in considerable confusion."

It is important to bear in mind that the amended bill contains the following allegations, and that they are not open to question on motions to dismiss the bill:

"The principal of the trust estate held by the defendant the Rhode Island Hospital Trust Company under trusts created by the said Davis never was, nor has it ever been, nor is it now, sufficient to make each part into which such principal was to be divided on the death of the survivor of the said Annie B. Davis and Emma B. Andrews equal at least $50,000. Both at the date of the death of said Emma B. Andrews and at the date of the death of said Theodore M. Davis such deficiency in the said principal to be divided as of the death of the said survivor was, and it now is, in excess of the value of the said art collection."

[11] The doctrine of executory devises and bequests, as counsel for the appellants contend, is without application to such a situation. We are not aware that it has anywhere been held that, because of the failure for inherent invalidity of that one of two alternative remainders which, as events turned out, was the one the testator intended to take effect, the other remainderman is thereby enabled to have what the testator never intended it to have. And we think the counsel for the appellants state the matter correctly when they say that the seventh clause properly considered and read, in the light of the admitted facts, comes in substance to this:

"I have given my art collection to Emma B. Andrews for life. If at her death the deficiency of the trust estate now existing shall not have been made up, then I give and bequeath as many of the articles included in the collection as may be necessary to make it up to the trust company as trustee to sell them and divide the proceeds among its beneficiaries; but, if and to the extent that such deficiency shall then have been made up, then I give and bequeath the remainder of said articles (all of them, if such deficiency shall then have been wholly made up) to the museum."

And, if this be the case it affords a plain and unmistakable example of alternative or substitutional remainders. In Doe v. Eyre, 5 C. B. 713, a case in the Exchequer Chamber, Baron Parke held that words of limitation contained in the devise over would effect a termination of the preceding estate, notwithstanding the invalidity of the executory devise itself. That seems to be the law in England. Robinson v. Wood, 27 Law J. Ch. 726; Hurst v. Hurst, L. R. 21 Ch. D, 278; O'Mahoney v. Burdett, L. R. 7 H. L. 388.

[12] But in the United States it seems to be settled that the failure of a limitation over after a fee leaves an absolute estate in the first taker. The failure of the limitation over cannot operate as a defeasance. Farnam v. Farnam, 83 Conn. 369, 385, 77 Atl. 70; Brattle

Square Church v. Grant, 3 Gray (Mass.) 142, 146, 63 Am. Dec. 725; Theological Educational Society v. Attorney General, 135 Mass. 285; Saxton v. Webber, 83 Wis. 617, 630, 53 N. W. 905, 20 L. R. A. 509; Manice v. Manice, 43 N. Y. 303; Dana v. Murray, 122 N. Y. 604, 26 N. E. 21; Starr v. Starr Methodist, 112 Md. 171, 183, 184, 76 Atl. 595.

[13] At common law there could be no limitation over of a chattel, but a gift for life carried the absolute interest. Kent's Commentaries (13th Ed.) vol. 2, p. 353. This rule was subsequently modified, so as to permit future estates in tangible personal chattels by way of executory devices, and such interests are not vested until they take effect in possession. Gray on Perpetuities (3d Ed.) § 114. In the case of In re Tritton, 6 Morell, 250, 255, decided in 1889 by the English High Court of Justice and the Court of Appeal, the testator bequeathed pictures as follows:

"I also give to my said wife the right of possession and enjoyment of all my pictures during her life (if she shall so desire) and, subject as aforesad, I give and bequeath all my said pictures to and for my son, H. J. Tritton, for his own absolute use and benefit."

The testator died. Mrs. Tritton retained possession of the pictures under the right given to her. In 1884 the son executed an assignment of his interest in them. Afterward, in 1888, he was adjudicated a bankrupt, and the pictures were claimed by the bankruptcy trustee, subject to the widow's life interest, on the ground that the previous assignment by the son was inoperative, because not registered. Counsel for the trustee in bankruptcy argued that:

"If this had been an absolute gift to the wife, with an ulterior reversion to the son, it would have been an executory bequest. But here it is not so. The testator only gives possession to the wife. This is an absolute gift of the property to the son, with the right of possession to the wife. It avoids an executory bequest. It was in the mind of the testator that there was a wide difference between property and possession, and that subject to the possession of the wife the property is to pass to the son."

It was held otherwise, Wills, J., saying that it was clear to him upon the authorities:

"That the interest which this lady took is definite and it comes first, and entitles her to the enjoyment and possession of these things—that is,'to the property in these things during her lifetime. It seems to me that the interest of the son was an executory bequest, which creates no present or vested interest, and which, if the mother survived him, would never come into operation."

See, also, In re Thynne, 1 L. R. Ch. Div. (1911) p. 282.

[14] And in the bequest of the art collection for life to Mrs. Andrews, and then to the museum, subject to the proviso or condition concerning the trust estate held by the Rhode Island Hospital Trust Company, the will did not create a chose in possession in the reversioner. After the life estate ended, the right to the possession was dependent upon the making up of the trust deficiency.

It is contended that the effect of the seventh clause was to give to the Metropolitan Museum of Art the collections therein described, but subject to a charge. The language of that clause is:

"Subject to the life estate therein of Mrs. Andrews, and with proviso hereinafter made, I give and bequeath," etc.

Then, after describing the things given to the museum, it continues: "The foregoing bequest * * * is subject, however, to the condition" that if the trust estate, held by Rhode Island Hospital Trust Company, under the trusts created by him, should not be sufficient to make each part, into which the principal was to be divided upon the death of the survivor of his wife and his sister Mrs. Andrews, equal at least to $50,000, then the said hospital should take for purposes of sale sufficient of the art collection, otherwise given to the museum, to increase the value of the principal of the trust estate, so that each part thereof should equal at least $50,000. The court below construed this as creating a charge. In his first opinion in the court below the District Judge, referring to this, said:

"The proviso was not intended to create a bequest over at all, but merely a charge upon the bequest to the museum. * * * This did not give the legatee over an absolute right to the chattels; it merely subjected them to a lien, as it were, by virtue of which money could be raised from their sale. This would alone be enough to fix the nature of the proviso as a charge, but the testator went even further in expressly providing for the right of redemption by the museum upon paying the deficiency."

And in the second opinion he used this language:

"However, I prefer to regard the gift over as a charge coupled with an ancillary power of sale. The objections are that it is not formally such, and that it gives the trustees greater rights than a chargee would have. But it is of no consequence whether this provision has the formal characteristics of a charge or not. The only important question is whether it is like a charge," etc. "And so it is not necessary to my decision to say that this is strictly a charge. Yet I think, as I have said, that it is a charge coupled with an ancillary power of sale to satisfy it. It is very doubtful whether the trustee could have demanded possession, and whether he was not limited to a selection and sale of so much of the chattels as the trusts required. But it makes no difference if I am wrong. If it was more than that, it falls as much within the rule as though it was a charge, strictissimi juris."

[15] A charge is an obligation imposed upon a person or an estate. If it is imposed on property, it creates a lien which is to be satisfied out of the specific property which is charged therewith. Cain v. Miller, 117 Md. 45, 82 Atl. 1055; Young v. Benton, 70 N. H. 268, 46 Atl. 51. We are unable to hold that this created a charge. A charge in equity gives to the one in whose favor it is raised neither title, right to possession, nor power of sale, except as a sale may be accomplished by a foreclosure. A charge in favor of A. cannot be created upon property which is given to A. In Lewin on Trusts (8th Eng. 1st Am. Ed.) vol. 1, p. 157, a charge is explained as follows:

"The first inquiry to be made is whether, upon the whole will, the testator intended the legacy and the devise to be two distinct independent gifts, flowing directly from himself to the legatee and devisee, or whether he devised the whole estate in the first instance to the devisee to the disinherison of the heir, and then gave the legacy, not as an original gift from the testator to the legatee, but by way of graft upon the estate previously given to the devisee; in the former case the legacy would be an exception, and in the latter a charge."

[16] An examination of the seventh clause shows that, subject to Mrs. Andrews' life estate and with a proviso therein set forth, the testator declared that he gave and bequeathed to the museum his collec-

tion, "except that I give and bequeath them to the trust company if the insufficiency now existing continues to exist." In other words, the bequest is to the museum and in certain contingencies to the Rhode Island Hospital Trust Company. This passed the title, provided the contingencies, upon which the title was to vest, occurred. That the property was to be sold by the persons who took title is not material upon the question whether title for the time being was in the one or the other of the designated beneficiaries.

[17] But if the charge theory, which the court below adopted, could be accepted as correct, it would not affect the final result. Even upon the theory of a charge, it would be none the less a gift of money charged on the art collection, or payable out of the proceeds of its sale. It would be charged merely for the purpose of paying a gift. And the testator has directed that his residuary estate shall comprehend gifts of *all* kinds failing for *any* reason. And in cases where a technical charge is created, which fails, not by reason of lapse, or some contingency which the testator may have had in his mind, but by reason of inherent illegality, the heir or next of kin or the residuary legatee takes, and not the specific devisee or legatee. Lewin on Trusts (8th Eng. 1st Am. Ed.) pp. 156, 158. And see Tregonwell v. Sydenham, 3 Dow. 194, 209 et seq. The English authorities relied upon in the court below, in its adoption of the charge theory, related to the disposition of void precuniary charges annexed to specific devises of land. They are without application to charges on gifts of personalty.

[18] The testator was a resident of Rhode Island, and his will was made in that state, and was subject to its laws. The statutes of that state expressly provide that, where a specific gift made by a will is void by reason of its "being contrary to law or otherwise incapable of taking effect," it "shall be included in the residuary devise, if any, contained in such will." General Laws of Rhode Island 1909, c. 254, § 7. And the highest court in Rhode Island held in Woodward v. Congdon, 34 R. I. 316, 83 Atl. 433, Ann. Cas. 1914C, 809, that although this statute in terms referred only to real estate, it applied as well in cases where the specific legatee whose legacy failed was also a residuary legatee, and his share in the residuary estate also failed for the same reason as the specific gift.

[19] While the ninth clause of the will is held invalid in so far as it undertook to dispose of the residue of the personal property by converting it into cash and paying over the proceeds to the Rhode Island Hospital Trust Company, to be held by it as a part of the trust estate created by Mr. Davis, the residuary clause was nevertheless perfectly valid as a definition of what is embraced in the residuary estate. And every will is made subject to the rule that any personal property remaining undisposed of by a residuary clause will be distributed under the statute of distributions.

In view of the fact that the gift to the trust company fails for the reason hereinbefore stated, the entire collection embraced in the gift, and which the trust company otherwise would have been entitled to receive, falls into the residuary estate and must be disposed of as part thereof. The language of the residuary clause is:

"I give, devise and bequeath all the remainder of the property, real and personal, of which I die possessed or over which I have any power of disposition including *any* of the foregoing *gifts* which shall fail for *any reason*," etc.

[20] Thus the testator by express testamentary direction provided, as already said that the remainder of his property, including "any gift which failed for any reason," should go to the executors, to be disposed of in the manner he indicated. Lapsed and void legacies would have fallen into the residue in any event, without this provision in the will, which really added nothing to the final disposition of property not otherwise validly given. Nickerson v. Bragg, 21 R. I. 296, 298, 43 Atl. 539; Peckham v. Newton, 15 R. I. 321, 4 Atl. 758. Unless a contrary interest appears in the will, a lapsed or a void legacy falls into the residue of the estate and goes with it, no matter whether the gift failed by lapse, invalid disposition, or other accident. The sum intended to be given, but which for any reason fails, swells the residuary estate and goes with it. Matter of Bonnet, 113 N. Y. 522, 524, 21 N. E. 139; Tindall's Executors, 24 N. J. Eq. 512.

It has always been the well-established rule that a legacy which has for any reason lapsed or is void is to go in accordance with the general residuary clause. Riker v. Cornwell, 113 N. Y. 115, 20 N. E. 602; Dexter v. Harvard College, 176 Mass. 192, 57 N. E. 371; Gray's Estate, 147 Pa. 67, 23 Atl. 205; Nickerson v. Bragg, 21 R. I. 296, 43 Atl. 539; Emery &c. College v. Shoemaker College, 92 Va. 320, 23 S. E. 765. In the case of a devise the rule at the common law is that when a devise fails the interest goes to the heir at law, unless there appear in the will express words or necessary implication to the contrary. A void devise did not become a part of the residue, or pass under a general residuary clause. Doe v. Underdown, Willes, 293; Wright v. Horne, 8 Mod. 222; Doe v. Sheffield, 13 East, 526; Remington v. American Bible Society, 44 Conn. 512; Van Kleeck v. Reformed Protestant Dutch Church, 20 Wend. (N. Y.) 457, affirmed 6 Paige, 600; Kelly v. Nichols, 18 R. I. 62, 22 Atl. 840, 19 L. R. A. 413. But this common-law rule has been generally departed from or abrogated by statute, so that even lapsed devises now pass to a general residuary devisee. Jackson v. Alsop, 67 Conn. 249, 34 Atl. 1106; Lamb v. Lamb, 131 N. Y. 227, 30 N. E. 133; Carter v. Board of Education, 144 N. Y. 621, 39 N. E. 628; Alverson v. Randall, 13 R. I. 71. But with that we are not concerned in this case.

The decree appealed from is reversed, and the court is directed to enter an order denying the defendants' motion to dismiss the amended bill, with leave to the defendants to answer the amended bill within five days after notice of entry of said order, and in default thereof directing the entry of a decree for the plaintiffs as prayed in the amended bill, and to take such further proceedings as may be appropriate and not inconsistent with this opinion.